No. 97-623

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 288

DAKOTA FIRE INSURANCE COMPANY, a division of

Employers Mutual Companies, a North Dakota Corporation,

Plaintiff,

v.

WARREN OIE, DIANA OIE, JEFFREY OIE, WALLY

OIE, ANNIKA OIE and KATHERINE OIE,

Defendants.

CERTIFIED QUESTION FROM:United States District Court for the District of Montana

The Honorable Charles C. Lovell, Judge presiding.

COUNSEL OF RECORD:

For Plaintiff:

James E. Vidal and James M. Ramlow (argued); Kauffman, Vidal &

Hileman, Kalispell, Montana

For Defendants:

John H. Gilliam (argued); Skjelset Law Offices, Missoula, Montana

For *Amicus Curiae*:

Peter F. Habein; Crowley, Haughey, Hanson, Toole & Dietich,

Billings, Montana (for Farmers Insurance Exchange)

Earl J. Hanson (argued); Hanson, Roybal, Lee & Todd, Billings, Montana

(for State Farm Mutual Automobile Insurance Company)

Patrick R. Sheehy (argued); Halverson, Sheehy & Plath, Billings, Montana

(for Montana Trial Lawyers)

Argued: May 28, 1998

Submitted: August 11, 1998

Decided: November 24, 1998

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

**¶1. Dakota Fire Insurance Company filed a declaratory judgment action in the United States District Court for the District of Montana to determine its duties under a policy of automobile liability insurance. Following submission of cross-motions for summary judgment, the United States District Court certified three questions to this Court for resolution under Montana law.**

**¶2. Pursuant to Rule 44, M.R.App.P., we accepted certification of the following three questions from the United States District Court:**

1. Whether, under Montana law, an insured who pays separate premiums for uninsured and underinsured motorist coverage may recover both types of benefits under the terms of the insured's policy if the insured was injured as a result of the negligence of an uninsured motorist.

2. Whether, under Montana law, an insured who pays separate premiums for uninsured and underinsured motorists coverage may recover, without offset, both types of benefits under the terms of the insured's policy.

3. (a) Whether, under Montana Code Ann. § 33-23-203 an insured who pays separate premiums for uninsured motorist coverage for each vehicle insured under the policy, may stack the uninsured motorist coverage available for each motor vehicle listed within the policy. (b) If stacking uninsured motorist coverages paid for by separate premiums is prohibited by § 33-23-203, whether that prohibition is void as against public policy.

**¶3. For the reasons set forth below, we answer question number 1 "No," we need not address question number 2, and we answer question number 3(a) "Yes."**

**¶4. The following statement of facts is as set forth in the Certification of Questions of Law issued by the United States District Court:**

1. Plaintiff Dakota Fire Insurance Company is incorporated under the laws of North Dakota and is a citizen and resident of that State.

2. Defendants are individuals residing in Missoula, Montana, and are each citizens of that State.

3. Plaintiff Dakota Fire Insurance Company issued to Defendants Warren Oie and Diana Oie a policy of motor vehicle liability insurance, including uninsured motorist coverage and underinsured motorist coverage, under policy number 13C-80-56 with a coverage period commencing April 23, 1992, and ending October 23, 1992. A true and correct copy of the policy . . . is attached hereto as Exhibit "A" and incorporated herein by reference. The policy insures two vehicles. The policy contains two separate amendatory endorsements for uninsured motorist coverage and for underinsured motorist coverage, in the amount of $500,000 each. The Oies paid separate premiums, for each of their two insured vehicles, for uninsured and for underinsured motorist coverages. Accordingly, a total of four separate premiums were charged for the uninsured and underinsured motorist

endorsements.

4. On September 5, 1992, Defendants were riding in a 1986 Ford Aerostar van, driven by Defendant Diana Oie. Defendants were traveling northbound on U.S. Highway 93 near Florence, Montana. A 1987 Mercury Topaz driven by Tori Jo Larson was southbound on U.S. Highway 93 and stopped at the intersection of White Cloud Lane, preparing to make a left turn. A 1987 Ford pickup driven by Carol Morris failed to stop and struck the Larson vehicle. The Morris vehicle was owned by Kevin Currieri, who had not purchased any insurance for the vehicle. The Morris vehicle then spun into the north-bound lane and was struck by the Oie vehicle. Diana Oie's daughter, Amanda Sue Moore, was fatally injured. The Oies' son, Defendant Jeffrey Oie, sustained serious head and facial injuries. Defendant Warren Oie sustained back injuries. Other injuries, physical and psychological, are disputed and are being separately litigated in Federal District Court, Missoula Division.

5. Plaintiff contends the only coverage available is one uninsured motorist coverage in the amount of $500,000.

6. Defendants contend they may stack the uninsured motorist coverage limits for the two vehicles insured under the policy for an aggregate uninsured motorist coverage limit of $1,000,000. Plaintiff contends that Mont. Code Ann. § 33-23-203 precludes intrapolicy stacking of uninsured motorist coverage limits, even when separate premiums are paid for each automobile insured under the policy.

7. Defendants contend that if the amounts they are legally entitled to recover as damages exceed the uninsured motorist coverage limits, they may then recover pursuant to their underinsured motorist endorsement for which they paid a separate premium. Plaintiff contends the two coverages are mutually exclusive.

8. Defendants contend they may also stack the underinsured motorist coverage limits for the two vehicles insured under the policy for an aggregate underinsured motorist coverage limit of $1,000,000. Plaintiff contends that Mont. Code Ann. § 33-23-203 precludes intrapolicy stacking of underinsured motorist coverage limits, even when separate premiums are paid for each automobile insured under the policy.

9. Plaintiff contends that if Defendants' underinsured motorist coverage applies above and beyond their own uninsured motorist coverage, Plaintiff may offset sums paid pursuant to the uninsured motorist coverage from policy limits available pursuant to the underinsured

motorist endorsement. Defendants contend the offset provision is void as against public policy. [Footnote omitted.]

## DISCUSSION

**¶5. 1. Whether, under Montana law, an insured who pays separate premiums for uninsured and underinsured motorist coverage may recover both types of benefits under the terms of the insured's policy if the insured was injured as a result of the negligence of an uninsured motorist.**

The policy of insurance issued in this matter provides separate, distinct coverages to the insured for liability, medical payments, uninsured motorist, and underinsured motorist claims. Those policy terms must be interpreted according to their "usual, common sense meaning as viewed from the perspective of a reasonable consumer of insurance products," which determines the rights and obligations of the parties. Stutzman v. Safeco Ins. Co. of America (1997), 284 Mont. 372, 376, 945 P.2d 32, 34 (citing Duensing v. Traveler's Companies (1993), 257 Mont. 376, 381, 849 P.2d 203, 206).

**¶6. As indicated on the declarations page of the policy, the insureds paid separately computed premiums for the uninsured motorist and underinsured motorist coverages. The uninsured motorist coverage provides that the insurer**

will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury"

1. Sustained by an "insured;" and

2. Caused by an accident.

**¶7. The uninsured motorist coverage defines an "uninsured motor vehicle" as " a land motor vehicle or trailer of any type: 1. To which no bodily injury liability bond or policy applies at the time of the accident."**

**¶8. The separate underinsured motorists coverage provides that the insurer**

will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury:"

1. Sustained by an "insured;" and

2. Caused by an accident.

**¶9. The underinsured motorist coverage (as modified by the amendatory endorsement) defines an "underinsured motor vehicle" as**

a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for "bodily injury" under that bond or policy to an "insured" is not enough to pay the full amount the "insured" is legally entitled to recover as damages.

**¶10. Unlike the uninsured motorist coverage, the underinsured motorist coverage is subject to the additional limitation that the insurer "will pay under the coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements."**

**¶11. The Oies contend that they are entitled to collect both uninsured and underinsured motorist coverage and that the vehicle that caused the accident was both an "uninsured motor vehicle" and an "underinsured motor vehicle," as defined by the policy, at the time of the accident.**

**¶12. Under the terms of the policy, a vehicle is "underinsured" only if it is the subject of a "bodily injury liability bond or policy" but the amount paid under that bond or policy is not enough to pay the full amount the insured is legally entitled to recover. The Oies contend that the requirement that there be coverage under a bond or policy is satisfied by the fact that the vehicle was covered by their own uninsured motorist coverage and that coverage was insufficient to pay the full amount that the Oies were legally entitled to recover. In other words, the Oies' uninsured motorist coverage is a substitute for the uninsured tortfeasor's missing liability insurance.**

**¶13. The Oies rely on language from Farmer's Alliance Mut. Ins. Co. v. Miller (9th Cir. 1989), 869 F.2d 509. In *Miller*, the passenger in a car driven by an underinsured motorist was killed when the car struck another vehicle; the passenger was covered by underinsured motorist coverage in the amount of $50,000. Pursuant to an offset provision in the underinsured motorist coverage, the insurer reduced the payment to the passenger's estate by $22,500, the amount received from the underinsured**

motorist's liability coverage. *Miller*, 869 F.2d at 510. The Ninth Circuit held this provision enforceable and noted the distinction between underinsured coverage and uninsured coverage as follows: "Uninsured motorist coverage," the court explained, "acts as a substitute for a tortfeasor's missing liability coverage," while "[u]nderinsurance motorist coverage presupposes some liability insurance but acts as a gap-filler" between the available liability coverage and the limits of underinsured motorist coverage. *Miller*, 869 F.2d at 513. Here, the insureds rely on the following language from *Miller*:

Companies selling auto insurance in Montana must offer uninsured motorist coverage. The Montana Supreme Court has interpreted this provision as expressing the legislature's intent that uninsured motorist coverage serve as a surrogate for an uninsured tortfeasor's missing liability insurance. . . . Uninsured motorist coverage acts as a substitute for a tortfeasor's missing liability coverage.

*Miller*, 869 F.2d at 512-13 (citation omitted).

¶14. Based on this language from *Miller*, the Oies conclude that "if the policyholder has purchased UM coverage, the uninsured tortfeasor has liability insurance purchased for him by the policyholder." Dakota Fire Insurance argues that when the above language is read in context of the balance of the court's opinion, it is clear that the inadequate liability insurance that triggers underinsured motorist coverage is not the insured's own uninsured motorist coverage, but the tortfeasor's deficient coverage. In *Miller*, the Ninth Circuit went on to state:

Underinsured motorist coverage presupposes some liability insurance but acts as a gap-filler, ensuring that the insured recovers at least the amount he is insured for, even if the tortfeasor's insurance coverage is deficient. By its nature, therefore, underinsured motorist coverage assumes the existence of some compensation from another source, namely the tortfeasor's liability insurance.

*Miller*, 869 F.2d at 513.

¶15. We agree with Dakota Fire's interpretation of *Miller*. Underinsured motorist coverage assumes that the tortfeasor carries liability insurance. This definitional prerequisite is not satisfied through substitution of the Oies' uninsured motorist coverage. This interpretation is consistent with our holding in Dagel v. Farmers Ins.

(1995), 273 Mont. 402, 903 P.2d 1359. In *Dagel*, the driver of a vehicle owned by an automobile dealership was struck from behind by an uninsured motor vehicle. Although entitled to uninsured motorist benefits under the dealer's policy, the driver settled for less than the policy limits. *Dagel*, 273 Mont. at 404, 903 P.2d at 1360. The driver then claimed uninsured motorist benefits under her own policy. Relying on the requirements of the policy, the insurer denied her claim because she had not "exhausted" the limits of liability under any applicable "bodily injury liability bonds or policies." *Dagel*, 273 Mont. at 404, 903 P.2d at 1360-61. We rejected the assumption that the dealer's uninsured motorist policy constituted a liability policy that had to be exhausted. In this case there was no other bodily injury liability policy in effect that applied to Dagel's injuries because the driver of the other vehicle was uninsured. In interpreting insurance contracts, the words of the policy are to be understood in their usual meaning; common sense controls.

The Farmers' policy defines an "uninsured motor vehicle" as one which is "not insured by a bodily injury liability bond or policy at the time of the accident." Accordingly, under Farmers' own definition, since the vehicle that injured Dagel was uninsured, there was no bodily injury liability bond or policy applicable to Dagel's injuries at the time of the accident.

*Dagel*, 273 Mont. at 406-07, 903 P.2d at 1362 (citation omitted).

¶16. Although the present case involves underinsurance rather than an exhaustion requirement in uninsurance, the principles of *Dagel* still pertain. In the present case, the Oies, in order to establish that the tortfeasor was "under" insured, must first establish that he was "insured." The Oies argue that the tortfeasor was vicariously insured by virtue of the Oies' uninsured motorist coverage. The Oies attempt to distinguish *Dagel* by pointing out that in *Dagel*, the uninsured coverage was that of the car dealer, not the injured party. That, however, is a distinction without a difference. Regardless of whether the uninsured coverage derives from the injured party or a third party, the question is the same: Does the uninsured motor vehicle coverage serve as substitute liability policy for the non-insured tortfeasor? In *Dagel* we held that uninsured motorist coverage does not serve as a substitute liability policy for the tortfeasor that has to be exhausted by the injured party. *Dagel*, 273 Mont. at 407, 903 P.2d at 1362. We hold that that same logic controls the outcome here. The policy definition of underinsured motor vehicle requires that a bodily injury liability bond or policy apply at the time of the accident. Here, the tortfeasor

had no liability policy and, as in *Dagel*, uninsured motorist coverage does not serve as surrogate liability coverage for the tortfeasor. Thus, since the tortfeasor was not insured, he cannot have been "under" insured.

¶17. The Hawaii Supreme Court addressed this issue in National Union Fire Ins. v. Ferreira (Haw. 1990), 790 P.2d 910, where an insured was injured when her vehicle was rear-ended by an uninsured motorist. After collecting the policy limit of her uninsured motorist coverage, she claimed benefits under her underinsured motorist coverage as well. *Ferreira*, 790 P.2d at 912. As here, the question was certified to the State Supreme Court by the United States District Court. The Hawaii Supreme Court held that an insured who paid separate premiums for both uninsured and underinsured motorist coverages is not entitled to receive benefits under both coverages if she was injured as a result of the negligence of an uninsured motorist. *Ferreira*, 790 P.2d at 913. Hawaii statutes defined "underinsured motor vehicle" as a motor vehicle to which the sum of bodily injury liability insurance coverage applicable at the time of the loss is less than the liability for damage imposed by law. Because a "prerequisite" of the statutory definition was the existence of bodily injury liability insurance coverage, an uninsured motor vehicle was not "underinsured" but "uninsured" only. *Ferreira*, 790 P.2d at 913. "In other words, the terms underinsured and uninsured, in our view, are mutually exclusive as applied to the same motor vehicle." *Ferreira*, 790 P.2d at 913.

¶18. As here, the insured in *Ferreira* argued that her own uninsured motorist coverage satisfied the requirement of "liability insurance" on behalf of the tortfeasor. The court rejected this argument and held that the insured was not entitled to collect both types of coverage. *Ferreira*, 790 P.2d at 913. "Bodily injury liability insurance coverage and uninsured motorist coverage constitute separate and distinct types of insurance coverages under Hawaii law." *Ferreira*, 790 P.2d at 913.

¶19. Although Montana has no statutory definition of "underinsured motor vehicle," the policy in question, like the Hawaii statute, requires that the tortfeasor's vehicle be covered by a bodily injury liability policy. Accordingly, we agree with the reasoning of the Hawaii court.

¶20. A motorist who carries both uninsured and underinsured motor vehicle coverage has two distinct and mutually exclusive coverages. If that insured motorist is injured by another motorist, the first determination is whether the tortfeasor is

covered by bodily injury liability insurance. If he has no liability coverage, then he is not insured and the injured party may collect only on his "uninsured motor vehicle" coverage. Since the tortfeasor cannot be both uninsured and underinsured, the injured party may not invoke both types of coverage.

¶21. 2.  Whether, under Montana law, an insured who pays separate premiums for uninsured and underinsured motorists coverage may recover, without offset, both types of benefits under the terms of the insured's policy.

¶22. Having held that an insured who pays separate premiums for uninsured and underinsured motorist coverage may not recover both types of benefits, we need not address the question of whether he or she may do so without offset.

¶23. 3.  Whether, under § 33-23-203, MCA (1991), an insured who pays separate premiums for uninsured motorist coverage for each vehicle insured under the policy, may stack the uninsured motorist coverage available for each motor vehicle listed within the policy. If stacking uninsured motorist coverages paid for by separate premiums is prohibited by § 33-23-203, MCA (1991), whether that prohibition is void as against public policy.

¶24. We are again confronted with the issue of whether insurance coverages may be stacked. This issue has arisen in a number of different contrasting contexts: uninsurance or underinsurance; named insured or occupant; interpreting policy language or statutory language; single policy or multiple policies. The present case presents the narrow issue of whether § 33-23-203, MCA (1991), precludes a named insured from stacking uninsured motorist coverages when the insured has paid multiple and separate premiums for such coverages.

¶25. In Sayers v. Safeco Ins. Co. of America (1981), 192 Mont. 336, 628 P.2d 659, we addressed the question of whether an occupant, as opposed to a named insured, can stack uninsured motorist coverage. Sayers was injured while in the process of jump-starting an insured vehicle. Although he was not physically in the vehicle, we held that his activity constituted a reasonable connection with the operation of the vehicle and thus that he was "occupying" the vehicle. He thus met the definition of an insured under the policy in question. *Sayers*, 192 Mont. at 339, 628 P.2d at 662. Since he was an insured under the policy, and since the policy covered more than one vehicle, he was entitled to stack the uninsured motorist coverages despite the fact

that he, as an occupant, had not paid the premiums for the coverage. "The justification for stacking lies not in who has paid for the extra protection, but rather that the protection has been purchased. The benefits flow to all persons insured." *Sayers*, 192 Mont. at 340, 628 P.2d at 662. The provisions of § 33-23-203, MCA (1981), however, were not raised by the parties nor discussed by the Court, since the case was decided before the enactment of the statute.

¶26. In 1995 we addressed a stacking issue presented in the context of a passenger asserting a claim against multiple policies rather than a single policy. Chilberg v. Rose (1995), 273 Mont. 414, 903 P.2d 1377. Chilberg, the passenger, brought suit against the car owner's insurer for stacking of uninsured motorist benefits under policies covering the owner's other vehicles, which, although insured, were not involved in the accident. Unlike Sayers, who met the definition of an insured under the single policy involved, Chilberg, in order to stack, would have had to meet the definition of insured under each of the multiple policies. *Chilberg*, 273 Mont. at 417, 903 P.2d at 1379. We held that Chilberg could only meet the definition of an insured under one policy; in other words, the policy for the vehicle that he was "occupying" at the time of the accident. *Chilberg*, 273 Mont. at 417, 903 P.2d at 1379. In other words, since he could not be "occupying" more than one vehicle at a time, he was only insured under one policy and could not stack the coverages from the other policies. The provisions of § 33-23-203, MCA (1991), which do not address a multiple policy situation, again were not in issue.

¶27. In Farmers Alliance Mut. Ins. Co. v. Holeman (1996), 278 Mont. 274, 924 P.2d 1315 (*Holeman I*), we were asked by the United States District Court to address the question of whether § 33-23-203, MCA (1995), precluded the stacking of optional medical payments and underinsured motorist coverage under a single policy covering more than one vehicle. *Holeman I*, 278 Mont. at 274-75, 924 P.2d at 1316. In short, we held that the statute does not prohibit the stacking of such optional coverage. In so holding, we volunteered that *Sayers* was contrary to § 33-23-203 MCA (1995). "Thus, under § 33-23-203, MCA, *Sayers* is no longer good law because under the terms of § 33-23-203, MCA, stacking of uninsured motorist coverage for multiple vehicles insured under a single policy is expressly prohibited unless the policy specifically provides otherwise." *Holeman I*, 278 Mont. at 277, 924 P.2d at 1317. Dakota Fire puts considerable store in this characterization of *Sayers* as no longer good law. This reliance is, however, misplaced.

¶28. First of all, the statement about *Sayers* was, as Dakota Fire concedes, *dictum* since the certified question before the Court in *Holeman I* pertained only to optional coverage for underinsured motorists, and did not encompass uninsured motorists coverage, which is mandatory and specifically referenced in the statute, § 33-23-203, MCA (1995). Secondly, our characterization of § 33-23-203, MCA (1995), in *Holeman I* merely restated the statutory language that the stacking of uninsured motorist coverage is disallowed regardless of the number of *vehicles* insured. *Holeman I*, 278 Mont. at 277, 924 P.2d at 1317. We did not, however, address the question presented here, whether stacking is prohibited regardless of the number of *premiums* paid. Finally, although *Sayers* discussed premiums, the focus was not on the number of premiums paid but on who had, or had not, paid premiums and whether that was determinative.

¶29. In interpreting the statute in *Holeman I*, we noted that § 33-23-203, MCA (1995), only addressed mandatory coverage. "The question of whether excess or additional coverages, such as underinsurance coverage, can be stacked was left as a matter of policy interpretation." *Holeman I*, 278 Mont. at 281, 924 P.2d at 1320. This statement served as an invitation to *Holeman II*, in which we addressed the issue of whether the policy, as opposed to the statute, prohibited the stacking of optional coverage for underinsured motorists. Farmers Alliance Ins. Co. v. Holeman, 1998 MT 155, 961 P.2d 114, 55 St.Rep. 601 (*Holeman II*). In *Holeman II*, we recognized that Leonard, the injured party, was an insured solely by virtue of his occupancy of the vehicle. Since he was not a named insured who had paid premiums for the coverage, he could not benefit from the "reasonable expectations" doctrine. *Holeman II*, ¶ 44. Nonetheless, we held that Leonard was entitled to the benefit of the "overriding public policy considerations upon which we relied in Bennett," and thus we allowed the stacking of the underinsured motorist coverages. *Holeman II*, ¶ 44.

¶30. In Bennett v. State Farm Mut. Auto Ins. Co. (1993), 261 Mont. 386, 862 P.2d 1146, Bennett was a named insured under separate State Farm policies. She sought to stack her underinsurance coverage under the two policies. *Bennett*, 261 Mont. at 387, 862 P.2d at 1147. We held that the policy language prohibiting stacking of coverage under the two policies was void. In so holding, we relied upon public policy and the doctrine of reasonable expectations. *Bennett*, 261 Mont. at 389-90, 862 P.2d at 1149. As to public policy, we held that an insurer may not place in an insurance policy a provision that defeats coverage for which the insurer has received valuable consideration. We recognized that underinsurance coverage (like uninsured

coverage) is personal to the insured; it does not depend upon the insured occupying an insured vehicle. *Bennett*, 261 Mont. at 389, 862 P.2d at 1148 (citing Chaffee v. U.S. Fid. & Guar. Co. (1979), 181 Mont. 1, 6, 591 P.2d 1102, 1104). We concluded, "[t]hus, Bennett could reasonably expect to recover damages up to the limit of both policies under which she was an insured and for which separate premiums had been paid." *Bennett*, 261 Mont. at 389-90, 862 P.2d at 1149. Affirming the doctrine of reasonable expectations, we further concluded:

Montana citizens should have a reasonable expectation that when they purchase separate policies for underinsured motorist coverage, they will receive adequate compensation for losses caused by an underinsured motorist, up to the aggregate limits of the policies they have purchased.

*Bennett, 261 Mont. at 390, 862 P.2d at 1149.*

¶31. The present case involves only one policy as opposed to the two policy situation in *Bennett*. That, however, is a distinction without a difference. The point is that Dakota, like State Farm in the Bennett case, received separate premiums (valuable consideration) for separate coverages. In contrast with the passenger in *Holeman II*, the Oies have standing to argue "reasonable expectations" because they are named insureds who paid premiums.

¶32. In the present case we must determine whether, under § 33-23-203, MCA (1991), the Oies, who paid separate premiums for uninsured motorist coverage for each vehicle insured under their policy, may stack the uninsured motorist coverages. For some 25 years, this Court has recognized the strong public policy in favor of enforcing coverage for which the insurer has received valuable consideration, to give the insured the benefit of his or her bargain. Ruckdaschel v. State Farm (1997), 285 Mont. 395, 398, 948 P.2d 700, 702. We have also recognized and affirmed Montana citizens' reasonable expectations in buying insurance policies. *Bennett*, 261 Mont. at 390, 862 P.2d at 1149. The question presented, then, is to what extent did the provisions of § 33-23-203, MCA (1991), supersede the doctrine of reasonable expectations and the public policy recognized by this Court favoring the enforcement of coverage for which an insurer has received valuable consideration.

¶33. Section 33-23-203, MCA (1991), provided as follows:

Unless a motor vehicle liability policy specifically provides otherwise, the limits of insurance coverage available under any such policy, including the limits of liability under uninsured motorist coverage, must be determined as follows, regardless of the number of motor vehicles insured under the policy:

(a) the limit of insurance coverage available for any one accident is the limit specified for the motor vehicle involved in the accident;

. . . .

(c) the limits of coverage specified for each motor vehicle insured under the policy may not be added together to determine the limit of insurance coverage available under the policy for any one accident.

**¶34. We conclude that § 33-23-203, MCA (1991), superseded neither the public policy nor the insureds' reasonable expectations. Unlike the 1997 version of the statute, the 1991 version applicable here makes no reference to the number of premiums paid. Rather, it focuses entirely on the number of vehicles insured and the "coverage specified for each motor vehicle." Thus, although the statute initially references uninsured motorist coverage, the balance of the statute is not in accord with the principles of uninsured motorist coverage or the grounds for stacking of uninsured motorist coverage that we have previously upheld. First of all, in focusing solely on the vehicles covered, the statute ignores the fact that uninsured motorist coverage is personal to the insured, and that it is not dependent upon occupancy of a vehicle.** *See Chafee***, 181 Mont. at 6, 591 P.2d at 1104. Quite simply, uninsured motorist coverage protects people, not vehicles. Secondly, the statute does not address the element that triggers the stacking of uninsured motorist coverage, in other words, the payment and/or receipt of premiums. Uninsured motorist coverages are stacked not because more than one vehicle was insured but because premiums were received by the insurer for more than one uninsured motorist coverage, and named insureds, such as the Oies, who have paid premiums, can reasonably expect to receive benefits for each coverage for which separate premiums were paid.**

**¶35. The legislature, in adopting statutes, establishes the law of the state. Art. V, Sec. 1, Mont. Const. Our job is to construe statutes as written. "[T]he office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-**

101, MCA. We cannot construe the "regardless of the number of motor vehicles" language in § 33-23-203, MCA (1991), as defeating coverage for which the insured has paid multiple premiums and the

insurer has received valuable consideration. A statute that focuses solely on *vehicle*s insured does not have the effect of relieving an insurer from paying uninsured motorist benefits under each coverage for which it has received valuable consideration in the form of premiums. Had the legislature meant, as a matter of public policy, to preclude stacking of uninsured motorist coverages despite the insureds having paid separate premiums for such coverages, then it would have expressly said "regardless of the number of *premiums* paid."

¶36. We hold that § 33-23-203, MCA (1991), does not apply in situations where an insured has paid separate premiums for uninsured motorist coverage. Accordingly, we answer question number three in the affirmative. Under § 33-23-203, MCA (1991), an insured who pays separate premiums for uninsured motorist coverage may stack the uninsured motorist coverages available within the policy.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

/S/ KARLA M. GRAY

/S/ JAMES C NELSON