
DA 06-0036

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 156

GERALD NEWBURY,

        Plaintiff and Appellant,

   v.

STATE FARM FIRE & CASUALTY INS. CO. OF
BLOOMINGTON, ILLINOIS, licensed to do business
in the State of Montana; and STATE FARM MUTUAL
AUTOMOBILE INS. CO. OF BLOOMINGTON,
ILLINOIS, licensed to do business in the State of Montana,

        Defendants and Appellees.


APPEAL FROM:    District Court of the Eleventh Judicial District,
                    In and For the County of Flathead, Cause No. DV-2003-643
                    Honorable Stewart E. Stadler, Presiding Judge


COUNSEL OF RECORD:

        For Appellant:

        Laurie Wallace, Bothe & Lauridsen, P.C., Columbia Falls, Montana

        For Appellees:

        Tracy Axelberg, Christensen, Moore, Cockrell, Cummins & Axelberg,
        P.C., Kalispell, Montana


                Submitted on Briefs:  October 11, 2006

                             Decided:  May 1, 2008


Filed:

                     _____
                                 Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Gerald Newbury filed a complaint for declaratory relief seeking to have certain provisions in his automobile insurance policies declared void as against public policy and asking that State Farm Fire & Casualty Co. (State Farm) be required to pay outstanding medical expenses. The parties filed cross-motions for summary judgment. The District Court for the Eleventh Judicial District, Flathead County, granted State Farm's Motion for Summary Judgment and denied Newbury's Motion for Summary Judgment. Newbury appeals. We affirm.

¶2 Newbury raises three issues on appeal:

¶3 1. Whether the workers' compensation provisions in Newbury's policies are ambiguous.

¶4 2. Whether the workers' compensation provisions violate public policy by violating Newbury's reasonable expectations.

¶5 3. Whether the workers' compensation provisions violate public policy by defeating coverage for which valuable consideration has been paid.

**Factual and Procedural Background**

¶6 The facts in this matter are not in dispute. The parties submitted agreed facts which the District Court relied on in ruling on the parties' cross-motions for summary judgment. The agreed facts are summarized below.

¶7 Newbury worked for the Montana Highway Maintenance Department. On December 31, 1995, while plowing a stretch of highway, he came upon a vehicle in the ditch. As Newbury was attempting to assist the driver of the vehicle, the driver struck

2

Newbury with the door of her car as she backed out of the ditch and fled the scene. Newbury was knocked down injuring his left arm and the left side of his back.

¶8    As a result of this incident, Newbury filed a claim for workers' compensation insurance benefits. The State Workers' Compensation Insurance Fund (State Fund) accepted the claim and paid medical benefits to Newbury. Between December 31, 1995, and December 31, 1998, Newbury incurred medical expenses of $18,405.80. Of that amount, the State Fund paid $17,230.00 in medical expenses "reduced by the schedule applied to workers' compensation claims." The State Fund did not pay the remaining $1,175.80 in medical expenses.

¶9    Newbury had two automobile insurance policies with State Farm. One policy covered Newbury's 1985 Honda Accord, and the other covered his 1985 Nissan pickup. These policies provided medical payment coverage of $5,000.00 per policy for reasonable medical expenses incurred within three years of a covered loss. Among other things, the policies provided that medical expenses are payable to the insured for bodily injury sustained "through being struck as a pedestrian by a motor vehicle or trailer." The policies also state that there is no coverage "to the extent workers' compensation benefits are required to be payable." Newbury paid separate premiums for each medical payment coverage.

¶10    On April 6, 2001, Newbury submitted a claim seeking payment of the full $10,000.00 in medical benefits from his State Farm policies. State Farm paid the remaining $1,175.80 for the medical expenses not paid by the State Fund. In the agreed facts, the parties stated that after the payments by the State Fund and State Farm, "there

3

were no balances owing to Gerald Newbury's medical providers for services rendered from December 31, 1995 through December 31, 1998." The parties further stated that "[f]or all amounts paid by the [State Fund], [State Farm has] denied payment of medical benefits pursuant to the provision in the policies offsetting payments of benefits made by [the State Fund]."

¶11 Newbury filed a Complaint for Declaratory Relief on December 9, 2003, seeking to have the District Court declare the workers' compensation provision in both policies void as against public policy and order State Farm to pay the outstanding medical payment benefits in the amount of $8,824.20.[1] Newbury also sought the costs of suit and attorney fees. The parties stipulated to an agreed set of facts (as summarized above) and submitted cross-motions for summary judgment on October 18, 2004. The parties waived oral argument on their summary judgment motions.

¶12 The District Court issued an order on December 6, 2005, granting State Farm's Motion for Summary Judgment and denying Newbury's motion. In that order, the court determined that the language of the workers' compensation provisions in Newbury's State Farm policies was not ambiguous and, because the policies clearly demonstrated an intent to exclude coverage, Newbury's expectations did not meet the requirements of the reasonable expectation doctrine. The court also determined that because the premiums charged and collected by State Farm were for coverage of an insured's medical expenses—except to the extent that workers' compensation benefits are required to be

---

[1] The $8,824.20 represents the combined policy limits of $10,000.00 minus the $1,175.80 already paid by State Farm.

4

payable—the exclusion did not negate coverage for which a premium had been paid. Consequently, the court concluded that the workers' compensation provision did not violate Montana public policy and was enforceable. The court further concluded that Newbury had not incurred any medical expenses that had not been paid for, thus he was not entitled to additional medical payment coverage.

¶13 Newbury appealed.

## Standard of Review

¶14 Summary judgment is proper only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Watkins Trust v. Lacosta*, 2004 MT 144, ¶ 16, 321 Mont. 432, ¶ 16, 92 P.3d 620, ¶ 16 (citing M. R. Civ. P. 56(c)). Our standard in reviewing a district court's summary judgment ruling is de novo. *Watkins Trust,* ¶ 16 (citing *Johnson v. Barrett,* 1999 MT 176, ¶ 9, 295 Mont. 254, ¶ 9, 983 P.2d 925, ¶ 9; *Stutzman v. Safeco Ins. Co. of America*, 284 Mont. 372, 376, 945 P.2d 32, 34 (1997)). We use the same M. R. Civ. P. 56 criteria applied by the district court. *Watkins Trust,* ¶ 16 (citing *Johnson,* ¶ 9). Moreover, all reasonable inferences which may be drawn from the offered proof must be drawn in favor of the party opposing summary judgment. *Watkins Trust*, ¶ 16 (citing *Johnson,* ¶ 8; *Schmidt v. Washington Contractors Group,* 1998 MT 194, ¶ 7, 290 Mont. 276, ¶ 7, 964 P.2d 34, ¶ 7). If there is any doubt regarding the propriety of the summary judgment motion, it should be denied. *360 Ranch Corp. v. R & D Holding*, 278 Mont. 487, 491, 926 P.2d 260, 262 (1996) (citing *Whitehawk v. Clark,* 238 Mont. 14, 18, 776 P.2d 484, 486-87 (1989)).

¶15 In addition, the interpretation of an insurance contract is a question of law for the court to decide. *Montana Pet. Tank Comp. Bd. v. Crumleys*, 2008 MT 2, ¶ 32, 341 Mont. 33, ¶ 32, 174 P.3d 948, ¶ 32 (citing *State Farm Mut. Auto. Ins. Co. v. Gibson,* 2007 MT 153, ¶ 9, 337 Mont. 509, ¶ 9, 163 P.3d 387, ¶ 9). We review a district court's conclusions of law to determine whether they are correct. *Crumleys*, ¶ 32.

**Issue 1.**

¶16 *Whether the workers' compensation provisions in Newbury's policies are ambiguous.*

¶17 Newbury argues that three ambiguities arise as a result of the language in the policies that coverage is excluded "to the extent worker's compensation benefits are required to be payable." First, he argues that the language itself is ambiguous, if not completely incomprehensible. He maintains that this phrase is subject to multiple interpretations because it is not defined anywhere in the policies, nor is it readily understandable by a reasonable consumer of insurance. Second, he argues that the language is ambiguous because the workers' compensation provision presents itself as an exclusion, but acts like an offset. Third, he argues that there is an ambiguity between this provision, the declarations pages, and the limits of liability provisions.

¶18 State Farm argues that Newbury seeks to create an ambiguity where none exists and that Newbury's purported inability to understand the provision does not render it ambiguous. State Farm maintains that, contrary to Newbury's assertions, the language in the policy is clear and unambiguous.

6

¶19 When interpreting an insurance policy, we read the policy as a whole and, if possible, we reconcile its various parts to give each one meaning and effect. *Crumleys*, ¶ 34 (citing *Farmers Alliance Mut. Ins. Co. v. Holeman*, 1998 MT 155, ¶ 25, 289 Mont. 312, ¶ 25, 961 P.2d 114, ¶ 25). The terms and words used in an insurance contract are to be given their usual meaning and construed using common sense. *Mitchell v. State Farm Ins. Co.*, 2003 MT 102, ¶ 26, 315 Mont. 281, ¶ 26, 68 P.3d 703, ¶ 26 (citing *Dakota Fire Ins. Co. v. Oie,* 1998 MT 288, ¶ 5, 291 Mont. 486, ¶ 5, 968 P.2d 1126, ¶ 5). If the parties dispute the meaning of a term, we determine whether the term is ambiguous by viewing the policy from the viewpoint of a consumer with average intelligence not trained in the law or insurance business. *Crumleys*, ¶ 34. An ambiguity exists when the policy, taken as a whole, is reasonably subject to two different interpretations. *Mitchell*, ¶ 26 (citing *Holeman*, ¶ 25). However, this Court will not create an ambiguity in an insurance policy where none exists. *Stutzman v. Safeco Ins. Co. of America*, 284 Mont. 372, 379, 945 P.2d 32, 36 (1997) (citing *Canal Ins. Co. v. Bunday*, 249 Mont. 100, 106-07, 813 P.2d 974, 977-78 (1991); *Farmers Alliance Mut. Ins. Co. v. Miller*, 869 F.2d 509, 512 (9th Cir. 1989)).

¶20 As to Newbury's first contention, that the phrase "required to be payable" is "ambiguous, if not completely incomprehensible," we disagree. Instead, we conclude that that phrase is clear and precise. Giving the terms and words used in the policies their usual meaning and construing those terms and words using common sense, *Mitchell*, ¶ 26, we find no ambiguity in the language used. Moreover, we conclude that a consumer with average intelligence, not trained in the law or insurance business,

7

*Crumleys*, ¶ 34, would find only one interpretation for this language, i.e., that State Farm was only obligated to pay the difference between the total medical expenses incurred by Newbury of $18,405.80, and the amount "required to be payable" by the State Fund of $17,230.00. In other words, under the terms of the policies, State Farm was only obligated to pay the unpaid medical expenses of $1,175.80, which it did. Had Newbury incurred additional medical expenses that were not "required to be payable" by the State Fund, State Farm would have had to pay Newbury's additional medical expenses up to the aggregate limits of the policies. Similarly, if this were not an on-the-job injury, State Farm would have had to pay all of Newbury's medical expenses up to the aggregate limits of the policies.

¶21 Newbury also argues that the workers' compensation provision is an offset provision, not an exclusion, and is, therefore, ambiguous based on our prior decisions in *Hardy v. Progressive Specialty Ins. Co.*, 2003 MT 85, 315 Mont. 107, 67 P.3d 892, and *Mitchell*. Again, we find Newbury's argument unpersuasive.

¶22 In *Hardy*, plaintiff Hardy was seriously injured when the vehicle in which he was riding was struck by another vehicle. Hardy recovered $50,000.00 from the liability insurer of the other vehicle, however, this amount was insufficient to compensate Hardy for his injuries. Consequently, Hardy sought compensation pursuant to the underinsured motorist (UIM) coverage he had for three of his vehicles through Progressive. Hardy paid a separate premium for each of the three $50,000.00 UIM coverages in his Progressive policy. He believed that the UIM coverage for the three vehicles could be stacked to aggregate $150,000.00 of UIM coverage. Progressive denied coverage

8

arguing that the $50,000.00 Hardy received from the liability insurer of the other vehicle had to be offset against Hardy's $50,000.00 of UIM coverage and that Hardy's UIM coverages could not be stacked or aggregated to allow Hardy to receive anything over and above that $50,000.00. Hardy sued for damages in the United States District Court for the District of Montana. The United States District Court submitted a Certified Order to this Court with three certified questions and we accepted certification. *Hardy*, ¶¶ 7-11.

¶23    In answering the certified questions, we determined that the definition of a UIM under Hardy's policy and the related offset provision were ambiguous because they were subject to more than one reasonable interpretation. *Hardy*, ¶ 19. We further determined that in nearly all conceivable situations, Progressive's promise to pay up to $50,000.00 of UIM coverage would not be honored. *Hardy*, ¶ 28. Thus, we held that the offset provision and the UIM definition violated Montana public policy because they created an ambiguity and rendered the coverage that Progressive promised to provide illusory. *Hardy*, ¶ 29. In addition, we struck down as unconstitutional Montana's anti-stacking statute to the extent that it allowed charging premiums for illusory coverage. *Hardy*, ¶ 38.

¶24    Similarly, we determined in *Mitchell* that the offset provisions in the motor vehicle insurance policies in question in that case were ambiguous because they were subject to more than one interpretation. *Mitchell*, ¶ 28. Mitchell was injured while a passenger in a vehicle owned and insured by others. Following the accident, he settled with the insurer of the other vehicle for that vehicle's policy limit of $50,000.00. Mitchell was insured by his parents' State Farm policies. Mitchell's parents insured five vehicles for which they

9

paid a separate premium for UIM coverage for each vehicle. By the terms of the policies, the uninsured motorist (UM) provision included the UIM coverage. After the accident, State Farm denied Mitchell's request for UIM coverage reasoning that because the $50,000.00 Mitchell received from the insurer of the other vehicle matched the highest single UM coverage in his parents' policies, that other vehicle was not "underinsured" and Mitchell was not entitled to recover. *Mitchell*, ¶¶ 5-8.

¶25 We noted in *Mitchell* that the combined UM/UIM coverage provision in the policies was confusing. *Mitchell*, ¶ 31. Mitchell's parents paid five separate premiums for $30,000.00 of UM coverage on four vehicles and $50,000.00 of UM coverage on one vehicle. *Mitchell*, ¶ 27. We determined in *Mitchell*, that in all cases where the tortfeasor's liability coverage was equal to or greater than $50,000.00, Mitchell could recover nothing. And, if Mitchell was injured by a tortfeasor who satisfied the UIM definition in Montana, his recovery would automatically be offset by $25,000.00. In addition, the UIM portions of the four $30,000.00 UM coverages were rendered valueless by the anti-stacking provision. *Mitchell*, ¶ 28.

¶26 We held in *Mitchell* that the offset provision violated public policy because the UIM coverage in the policy was part of the mandatory UM coverage and Montana public policy prohibits offsets of mandatory coverage. *Mitchell*, ¶ 35 (citing *Grier v. Nationwide Mut. Ins. Co.*, 248 Mont. 457, 459, 812 P.2d 347, 349 (1991)). We further held in *Mitchell* that the anti-stacking provision in the policies violated Montana public policy because they defeated coverage for which valuable consideration had been paid. *Mitchell*, ¶ 39.

¶27 Whether denominated an offset or an exclusion, the workers' compensation provision in the case *sub judice*, unlike the UM and UIM coverages in *Hardy* and *Mitchell*, did not defeat coverage and render any coverage that State Farm promised to provide illusory. First, in *Hardy* and *Mitchell,* the insureds were not adequately compensated because of the UIM provisions in their policies. Here, Newbury was adequately compensated because all of his medical expenses were paid. Second, in *Hardy* and *Mitchell,* the insurers refused to stack coverage to allow the insureds to recover under the UIM provisions. Here, State Farm agreed that the $5,000.00 of medical payment coverage in each of Newbury's policies could be stacked for a total of $10,000.00 in medical payment coverage. Third, unlike *Mitchell*, the workers' compensation provision in the instant case does not "offset" any mandatory coverage. Fourth, consistent with the language of the policies in the present case, State Farm paid all of Newbury's outstanding medical expenses and would have paid more in the absence of an on-the-job injury or in the event Newbury incurred more medical expenses during the three-year limitations period.

¶28 For his third contention that the workers' compensation provision is ambiguous, Newbury claims that there is an ambiguity between this provision, the declarations pages, and the limits of liability provisions. He argues that the declarations pages set forth the limits of coverage without any restriction or equivocation thereby placing them in conflict with any coverage limitations in the policy booklets. Once again we find Newbury's arguments unpersuasive.

11

¶29 Newbury was only able to produce the declarations page for the policy on his 1985 Nissan pickup. While that page does list the limit of liability under medical payments as $5,000.00 for each person, the page also provides that the coverages are "AS DEFINED IN POLICY." In addition, the bottom of the declarations page reads "YOUR POLICY CONSISTS OF THIS PAGE, ANY ENDORSEMENTS, AND THE POLICY BOOKLET, FORM 9826.3."

¶30 As we noted previously in this Opinion, an ambiguity exists only when the policy, *taken as a whole*, is reasonably subject to two different interpretations. *Mitchell*, ¶ 26 (citing *Holeman*, ¶ 25). Here, the declarations page was expressly made a part of the policy. The provision at issue provided that there was no medical payment coverage "to the extent workers' compensation benefits are required to be payable" and no other policy provision conflicts with this exclusion.

¶31 "A declarations page which suggests coverage in an amount which is not actually available is misleading." *Hardy*, ¶ 23. In this case, coverage was available up to $10,000.00, the aggregate amount of both policies. However, because the amount of unpaid medical expenses totaled only $1,175.80, State Farm paid only that $1,175.80. Under the workers' compensation provision, if the extent to which worker's compensation benefits were "required to be payable" had only been $8,000.00 of Newbury's $18,000.00 in medical expenses, State Farm would have had to pay the remaining $10,000.00 under the policies. Consequently, coverage was not "defeated" in this case.

¶32 Based on the foregoing, we hold that the workers' compensation provisions in Newbury's State Farm policies were not ambiguous.

**Issue 2.**

¶33 *Whether the workers' compensation provisions violate public policy by violating Newbury's reasonable expectations.*

¶34 Newbury argues that the workers' compensation provisions are invalid because they contravene the reasonable expectations of the insured and, therefore, Montana public policy.

¶35 The reasonable expectations doctrine is inapplicable where the terms of the insurance policy clearly demonstrate an intent to exclude coverage. *Stutzman v. Safeco Ins. Co. of America*, 284 Mont. 372, 381, 945 P.2d 32, 37 (1997) (citing *Wellcome v. Home Ins. Co.,* 257 Mont. 354, 359, 849 P.2d 190, 194 (1993)). Moreover, expectations that are contrary to a clear exclusion from coverage are not objectively reasonable. *Crumleys*, ¶ 35 (citing *Lee v. USAA Cas. Ins. Co.,* 2001 MT 59, ¶ 30, 304 Mont. 356, ¶ 30, 22 P.3d 631, ¶ 30). "Courts should not . . . seize upon certain and definite covenants expressed in plain English with violent hands, and distort them so as to include a risk clearly excluded by the insurance contract." *Crumleys*, ¶ 35 (citing *Mecca v. Farmers Ins. Exchange*, 2005 MT 260, ¶ 9, 329 Mont. 73, ¶ 9, 122 P.3d 1190, ¶ 9).

¶36 In Montana, parties to an insurance contract may include provisions that exclude coverage without violating public policy if the exclusion applies to optional, rather than mandatory, coverage. *Stutzman,* 284 Mont. at 380-81, 945 P.2d at 37. Mandatory coverage in Montana consists of liability limits for bodily injury of $25,000.00 per person

and $50,000.00 per accident, and a liability limit of $10,000.00 for injury to or destruction of property. Sections 61-6-103(2) and 301(1), MCA. Medical payments coverage is not mandatory in Montana. Its presence in an insurance contract is at the sole discretion of the parties to the contract.

¶37 Newbury argues that our holding in *Stutzman* regarding optional coverage was limited by our decision in *Hardy* wherein we stated that "[p]ublic policy considerations that favor adequate compensation for accident victims apply to UIM coverage in spite of the fact that UIM coverage is not mandatory in Montana." *Hardy*, ¶ 21 (citing *Bennett v. State Farm Mut. Auto. Ins. Co.*, 261 Mont. 386, 389, 862 P.2d 1146, 1148 (1993)). However, contrary to Newbury's contentions, this statement from *Hardy* does not limit our holding in *Stutzman* in the way Newbury suggests as nothing in *Stutzman* contemplated that accident victims should not be adequately compensated whether the provisions in the policy were optional or mandatory. Instead, we concluded in *Hardy* that the holding in *Stutzman* was inapplicable to the policy at issue in *Hardy* because, unlike the policy in *Stutzman*, the terms of the UIM coverage in the policy in *Hardy* were ambiguous. *Hardy*, ¶ 26. We stated in *Hardy* that

> [t]he household exclusion in *Stutzman* was not ambiguous and did not violate public policy. *Stutzman*, 284 Mont. at 380-81, 945 P.2d at 37. We emphasized that a household exclusion was not against public policy and did not violate the consumer's reasonable expectations when "the terms of the insurance policy clearly demonstrate an intent to exclude coverage." *Stutzman*, 284 Mont. at 381, 945 P.2d at 37.

*Hardy*, ¶ 25.

14

¶38    The policy in the present case clearly demonstrates an intent to exclude coverage "to the extent worker's compensation benefits are required to be payable." We conclude that while it was reasonable for Newbury to expect that his State Farm policies would pay his medical expenses (up to the policy limits of $10,000.00) once the State Fund had paid all it was required to pay, it was not reasonable for Newbury to expect to receive funds in excess of his medical expenses.

¶39    Newbury's policies provide the following with respect to medical expenses:

> We will pay reasonable medical expenses, for bodily injury caused by accident, for services furnished within three years of the date of the accident. These expenses are for necessary medical, surgical, X-ray, dental, ambulance, hospital, professional nursing and funeral services, eyeglasses, hearing aids and prosthetic devices.

Based on this language, the medical payment benefits under the policies are payable only for medical expenses. It is undisputed in this case that Newbury received full payment for his medical expenses. He owes nothing to any health-care provider and there is no evidence to suggest his health-care providers are seeking any additional payment.

¶40    Nevertheless, Newbury proclaims that "the workers' compensation medical benefits paid in this case amounted to approximately two-thirds of the total charges, or $17,230.00 out of approximately $27,000.00. (Agreed Fact No. 10)." Nowhere in the agreed facts does it state that Newbury incurred $27,000.00 in medical expenses of which the State Fund paid only two-thirds. Agreed Fact No. 10 actually states:

> Between December 31, 1995, and December 31, 1998, Mr. Newbury incurred medical expenses of $18,405.80. Of that amount, the [State Fund] paid approximately $17,230.00 in medical benefits reduced by the schedule applied to workers' compensation claims. Between December 31, 1995,

and December 31, 1998, the [State Fund] failed to pay approximately $1,175.80 in medical expenses.

The agreed facts further state that State Farm paid the remaining $1,175.80 in medical expenses and that "there were no balances owing to [Newbury's] medical providers . . . ."

¶41 Accordingly, we hold that the workers' compensation provision did not violate public policy as Newbury's expectations were not objectively reasonable.

### Issue 3.

¶42 *Whether the workers' compensation provisions violate public policy by defeating coverage for which valuable consideration has been paid.*

¶43 Newbury argues that the workers' compensation provisions in his policies denied him coverage for which he had paid valuable consideration, thus violating Montana public policy.

¶44 "An insurance policy cannot include provisions that defeat coverage for which valuable consideration was received." *Mitchell*, ¶ 39 (citing *Bennett,* 261 Mont. at 389, 862 P.2d at 1148). In this case, Newbury paid valuable consideration for medical payment benefits subject to the express condition that there was no coverage "to the extent worker's compensation benefits are required to be payable." Coverage was not "defeated" here as Newbury did not receive less coverage than he purchased, rather, he received exactly the coverage he contracted for.

¶45 Montana law expressly relieves insurers of any legal obligation to include in their automobile policies a provision of indemnity against employment-related harm. Section 61-6-103(5), MCA, provides in part: "A motor vehicle liability policy need not insure any liability under any workers compensation law . . . ."

16

¶46 Newbury contends that under *Sullivan v. Doe*, 159 Mont. 50, 495 P.2d 193 (1972), he is entitled to his medical payment benefits regardless of any collateral source payment. However, what this Court actually held in *Sullivan* was that an insurer could not reduce its liability under the UM coverage below the statutory minimum by subtracting the amount of workers' compensation benefits a person has received. *Sullivan*, 159 Mont. at 60-61, 495 P.2d at 198-99. We did not, as Newbury implies, hold in *Sullivan* that workers' compensation benefits could never be applied to optional coverages.

¶47 What Newbury paid valuable consideration for in this case was to have his medical expenses paid and it is undisputed that his medical expenses were paid. To allow Newbury to receive in excess of the total amount of his medical expenses would result in a windfall to Newbury.

¶48 Accordingly, we hold that the workers' compensation provisions did not violate public policy as Newbury received exactly the coverage for which he had paid valuable consideration.

### Conclusion

¶49 Because we have determined that the policies in question were not ambiguous; they did not violate Newbury's reasonable expectations; and they did not defeat coverage for which valuable consideration had been paid, we hold that the District Court did not err in granting State Farm's motion for summary judgment.

¶50 Affirmed.

/S/ JAMES C. NELSON

17

We Concur:

/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ BRIAN MORRIS


Justice Jim Rice concurring.

¶51    I concur in the conclusions reached by the Court, but under a different rationale. Under Issue 1, I agree that the policy language here is clear and unambiguous. I further agree that *Hardy* and *Mitchell* provide no support for Newbury's arguments because the policy language in those cases is distinguishable from the language here, although not for the reasons expressed by the Court in ¶ 27. The policies in those cases contained offset provisions which made the coverage as stated on the declarations page illusory. Such illusory coverage does not exist here, and it is for that reason—and not that the claimants in those cases were not "adequately compensated" or that the insurers there refused to stack the coverages—that I reject Newbury's reliance on those cases. I continue to maintain that these others issues were wrongly reasoned and decided by the Court.


/S/ JIM RICE