

DA 12-0602 and DA 12-0661

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 207

DOROTHY J. HARRIS,

       Plaintiff and Appellant,

  v.

ST. VINCENT HEALTHCARE,

       Defendant and Appellee,

*******************************************

DOROTHY J. HARRIS and TEDEEN HOLBERT,

       Plaintiffs and Appellants,

  v.

BILLINGS CLINIC,

       Defendant and Appellee.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DV-12-0060
Honorable Gregory R. Todd, Presiding Judge
Cause No. DV-12-0059
Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Alexander (Zander) Blewett, III, Andrew (Drew) Blewett, Hoyt &
        Blewett, Great Falls, Montana

        Jim Edmiston, Shane Colton, Joe Cook, Edmiston & Colton,
        Billings, Montana

For Appellee St. Vincent Healthcare:

Brendon J. Rohan, Poore, Roth & Robinson, P.C., Butte, Montana

For Appellee Billings Clinic:

Ian McIntosh, Kenneth K. Lay, Crowley Fleck, PLLP, Bozeman, Montana

Submitted on Briefs:  May 28, 2013

Decided:  July 25, 2013

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Dorothy J. Harris (Harris) and Tedeen Holbert (Holbert) appeal from orders in two separate cases from Montana's Thirteenth Judicial District Court, Yellowstone County, dismissing Harris and Holbert's breach of contract and constructive fraud claims against Billings Clinic, and Harris' similar claims against St. Vincent Healthcare. We affirm both District Court decisions in this consolidated appeal.

## ISSUES

¶2 Harris and Holbert raise four issues on appeal. Ultimately, all of these issues can be addressed in the following inquiry:

¶3 1. Did the District Courts err in dismissing Harris and Holbert's breach of contract and constructive fraud claims pursuant to M. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 On November 9, 2008, Holbert was involved in an automobile accident caused by another driver. The at-fault driver carried a Farmers automobile insurance policy. Holbert received medical treatment at Billings Clinic on 30 occasions from the date of the accident to December 17, 2009. Billings Clinic billed Holbert for medical expenses related to the accident, which totaled $6,073.60. Farmers, as the at-fault driver's insurer, remitted payment for Holbert's medical expenses in full.

¶5 On February 25, 2010, Harris was injured in an unrelated automobile accident caused by a different third-party tortfeasor. The other driver carried a State Farm automobile insurance policy. Harris received medical treatment at St. Vincent Healthcare

3

on the day of the accident and on March 22, 2010. St. Vincent Healthcare billed Harris for medical expenses totaling $777.52. The third-party tortfeasor's insurance carrier, State Farm, paid for Harris' medical expenses incurred at St. Vincent Healthcare. Harris also received medical treatment at Billings Clinic for injuries sustained in the accident on nine occasions between April 26, 2010, and July 19, 2011. State Farm paid Harris' $8,993.34 Billings Clinic bill.

¶6 During the relevant period of time when Holbert and Harris were patients of Billings Clinic and St. Vincent Healthcare, both Holbert and Harris were members of health plans administered by Blue Cross Blue Shield of Montana (BCBS). BCBS entered into a preferred provider agreement (PPA) with Billings Clinic and St. Vincent Healthcare. The pertinent terms of the PPAs are the same for both providers. Pursuant to the PPA, Billings Clinic and St. Vincent Healthcare agreed to accept payment from BCBS at a discounted reimbursement rate for certain medical services provided to BCBS insureds.

¶7 On January 13, 2012, Harris filed her complaint in District Court against Billings Clinic. Harris filed an amended complaint that added Holbert as a plaintiff on April 9, 2012. The amended complaint alleged individual and class claims of breach of contract and constructive fraud, and requested compensatory damages equal to the difference between the amount the third-party insurers paid to Billings Clinic and the reduced reimbursement rates under the PPA with BCBS. Judge Fagg presided in the case against Billings Clinic.

¶8 On May 17, 2012, Billings Clinic filed a M. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. After the matter was fully briefed, the District Court granted Billings Clinic's motion to dismiss on July 3, 2012. The District Court determined that an insured plaintiff is entitled to recover only the amount of medical expenses paid and accepted as payment in full by the medical provider, not the amount billed for such medical services. Otherwise, a plaintiff would receive a windfall because he would recover amounts he never incurred and would never have had to pay. Next, the District Court determined that Harris and Holbert did not show that they suffered any detriment or legally cognizable damages based on their claims. The District Court concluded that Harris and Holbert did not owe Billings Clinic any additional amount and therefore had been made whole. The District Court reasoned that even if Billings Clinic had charged the third-party insurers at the reduced rate pursuant to the PPA, Harris and Holbert would essentially have been in the same exact position had the alleged breach never occurred. The District Court noted that Harris and Holbert's amended complaint did not contain any allegations that they had been deprived of settlement or insurance proceeds as a result of Billings Clinic's conduct.

¶9 On January 13, 2012, Harris also filed a complaint against St. Vincent Healthcare. This case was assigned to Judge Todd. Harris filed her second amended complaint on April 3, 2012, in which she asserted the same individual and class claims as she did against Billings Clinic. On August 2, 2012, Harris filed a motion for class certification. St. Vincent Healthcare filed a M. R. Civ. P. 12(b)(6) motion to dismiss on August 3,

5

2012. The District Court held oral argument on the motion for class certification and the motion to dismiss.

¶10 On October 16, 2012, the District Court granted St. Vincent Healthcare's motion to dismiss. The District Court determined that St. Vincent Healthcare was only contractually obligated to bill or collect discounted rates as set forth in the PPA when a patient received services that were paid for under a BCBS health plan. Under these circumstances, the District Court concluded that St. Vincent Healthcare did not breach any contractual obligation by billing State Farm according to its usual rates. Next, the District Court examined Harris' constructive fraud claim and determined that St. Vincent Healthcare had no legal duty under the PPA to charge a third-party insurer at the BCBS reimbursement rate. Accordingly, the District Court concluded that Harris failed to state a claim upon which relief could be granted.

¶11 The cases against Billings Clinic and St. Vincent Healthcare present common questions for this Court. Harris and Holbert appeal both District Court orders dismissing their claims against Billings Clinic and St. Vincent Healthcare in this consolidated appeal.

**STANDARD OF REVIEW**

¶12 We review de novo a district court's ruling on a motion to dismiss for failure to state a claim pursuant to M. R. Civ. P. 12(b)(6). *Meagher v. Butte-Silver Bow City-County*, 2007 MT 129, ¶ 13, 337 Mont. 339, 160 P.3d 552; *Plouffe v. State*, 2003 MT 62, ¶ 8, 314 Mont. 413, 66 P.3d 316. The determination of whether a complaint states a claim is a conclusion of law, and the district court's conclusions of law are

6

reviewed for correctness.  *Farmers Coop. Ass'n v. Amsden*, 2007 MT 287, ¶ 9, 339 Mont. 452, 171 P.3d 684; *Guest v. McLaverty*, 2006 MT 150, ¶ 2, 332 Mont. 421, 138 P.3d 812.

## DISCUSSION

¶13     *Did the District Courts err in dismissing Harris and Holbert's breach of contract and constructive fraud claims pursuant to M. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted?*

¶14     A motion to dismiss under M. R. Civ. P. 12(b)(6) allows the district court to examine only whether "a claim has been adequately stated in the complaint."  *Meagher*, ¶ 15.  The court is limited to an examination of the contents of the complaint in making its determination of adequacy.  *Meagher*, ¶ 15.  The effect of a M. R. Civ. P. 12(b)(6) motion to dismiss is that all of the well-pleaded allegations in the complaint are admitted as true, and the complaint is construed in the light most favorable to the plaintiff.  *Amsden*, ¶ 9; *Plouffe*, ¶ 8.  The Court has no obligation, however, to accept as true legal conclusions or allegations that lack factual basis.  *Western Sec. Bank v. Eide Bailly LLP*, 2010 MT 291, ¶ 55, 359 Mont. 34, 249 P.3d 35; *Cowan v. Cowan*, 2004 MT 97, ¶ 14, 321 Mont. 13, 89 P.3d 6.  We will affirm the district court's dismissal only if we conclude that the plaintiff would not be entitled to relief based on any set of facts that could be proven to support the claim.  *Guest*, ¶ 2; *Plouffe*, ¶ 8.

¶15     It is important to note, at the outset, a recent decision of this Court involving similar issues to those presented in the instant case.  In *Conway v. Benefis Health Sys.*, 2013 MT 73, 369 Mont. 309, 297 P.3d 1200, Conway was injured in a car accident and received medical treatment at Benefis.  *Conway*, ¶ 6.  Conway had healthcare coverage through TRICARE and also had medical payments coverage through Kemper, his

7

automobile insurance carrier. *Conway*, ¶ 6. BCBS served as the network subcontractor for TRICARE and entered into a PPA with Benefis. *Conway*, ¶ 6. Benefis billed multiple insurers and first received payment from TRICARE at the reduced reimbursement rate agreed upon in the PPA. *Conway*, ¶ 7. Subsequently, Benefis received payment from Kemper at the undiscounted billing rate, and therefore refunded the earlier payment made by TRICARE in full because TRICARE functions as a secondary payer. *Conway*, ¶ 7. Conway filed a lawsuit against Benefis claiming that he was entitled to the additional amount that Benefis received from Kemper over and above the TRICARE reimbursement rate established by the PPA. *Conway*, ¶ 8.

¶16 This Court determined that while Benefis was required under the PPA to accept the TRICARE rates for "Covered Services," nothing in the PPA prohibited Benefis from accepting the full amount from the responsible insurer. *Conway*, ¶ 32. The PPA did not dictate the rates at which Kemper must reimburse Benefis. *Conway*, ¶ 32. Further, we rejected Conway's argument that he was entitled to receive the difference between the TRICARE reimbursement rate and the amount that Kemper paid Benefis. *Conway*, ¶ 33. We reasoned that Conway did not owe Benefis any additional amount since Benefis accepted the payment from Kemper as payment in full for the medical treatment rendered. *Conway*, ¶ 35. This Court concluded that medical payments coverage was only available for the payment of the actual cost of medical treatment, so if Conway were allowed to pocket the additional sums at issue, the result would be a windfall to Conway. *Conway*, ¶ 35.

8

¶17 Our decision in *Conway* is instructive as we turn to the instant case. Harris and Holbert argue that the District Courts erred in multiple ways in dismissing their claims. Harris and Holbert's first contention of error centers on the meaning of the term "Covered Services" in the PPA. The PPA defines "Covered Services" as "those Health Care Services furnished to a Member by the Hospital which will be paid for as set forth under the terms of the applicable Health Plan." "Health Plan" is defined in the PPA as plans offered, administered, or coordinated by BCBS using BCBS networks.

¶18 Our interpretation of the meaning of the term "Covered Services" is essential to the outcome of this case because St. Vincent Healthcare and Billings Clinic's obligation to bill and collect at the reduced reimbursement rate in the PPA applies only to "Covered Services." The PPA provides as follows:

> Compensation by BCBSMT. This Article applies to the payment to Hospital for Medically Necessary "Covered Services" provided to Members whose Health Plans access those provider networks established under this Contract in which the Hospital is agreeing to participate.

In a separate section titled "Non-Covered Services," the PPA explains that BCBS will only pay for services covered by the PPA and the Health Plan.

¶19 The District Courts determined that healthcare providers are only contractually obligated to bill or collect discounted rates where a plaintiff receives services that are paid for under a BCBS health plan. The District Courts noted that this interpretation of the term "Covered Services" was consistent with the underlying purpose of the PPA. Healthcare providers benefit from the PPA because it guarantees payment of bills, supports efficient claims processing, and encourages BCBS insureds to seek out certain

9

providers when they are in need of medical care. The District Courts reasoned that these benefits to healthcare providers are what in turn justified the reduced reimbursement rates established by the PPA.

¶20 The District Courts also looked to the language of Montana's Preferred Provider Agreements Act, § 33-22-1702, MCA, which explains that the purpose of a PPA is to allow an insurer to "enter into agreements in which the participating providers accept negotiated fees as payment in full for health care services the health care insurer is obligated to provide or pay for under the health benefit plan." Relying on the language in the PPA and the purposes behind such agreements, the District Courts concluded that in situations where a person or entity other than BCBS is liable for the cost of the services, such as State Farm or Farmers, those benefits are not in play and St. Vincent Healthcare and Billings Clinic are not obligated to bill and collect at the reduced reimbursement rates set forth in the PPA.

¶21 Harris and Holbert argue that the District Courts focused too narrowly when surmising the meaning of the term "Covered Services." Harris and Holbert maintain that pursuant to the rules of contract interpretation, § 28-3-202, MCA, when the whole of the PPA is taken together so as to give effect to every part of the contract, the meaning of "Covered Services" is not restricted to only those services paid for by BCBS. In support of their expansive definition of the term "Covered Services," Harris and Holbert point to different sections of the PPA where the term is used and piece together a contrary interpretation of "Covered Services."

¶22 First, Harris and Holbert cite to a section titled "Continued Care after Termination." Harris and Holbert argue that since this provision requires healthcare providers to continue to furnish "Covered Services" to members for a period of time even after BCBS is insolvent and cannot pay, the term "Covered Services" is not restricted to only those services paid for by BCBS. Second, Harris and Holbert look to the definition of "Health Plan," which mentions providing, delivering, and arranging for "Covered Services." Harris and Holbert contend that this definition is inconsistent with the District Courts' ruling that "Covered Services" means only services paid for by BCBS. Next, they attempt to conflate the definition of "Covered Services" with the separately defined term "Health Care Services." Harris and Holbert further argue that a provision allowing BCBS to pay a member directly for "Covered Services" from a non-participating provider renders the term ambiguous. Finally, Harris and Holbert reference the definitions of "Covered Medical Expense" and "Covered Services" from their health plans to assert that "Covered Services" means all services mentioned in the health plans which are not excluded.

¶23 Harris and Holbert maintain that the allegedly inconsistent use of the term "Covered Services" in different sections of the PPA creates an ambiguity. Citing *Mitchell v. State Farm Ins. Co.*, 2003 MT 102, 315 Mont. 281, 68 P.3d 703, Harris and Holbert urge this Court to construe the alleged ambiguity in their favor and apply the "reasonable expectations doctrine" to find that the term "Covered Services" does not mean that the services must be paid by BCBS. We reject Harris and Holbert's attempt to

11

import our rules regarding interpretation of an insurance policy into our construction of the PPA.

¶24 "An ambiguity exists where the language of a contract, as a whole, reasonably is subject to two different interpretations." *West v. Club at Spanish Peaks LLC*, 2008 MT 183, ¶ 53, 343 Mont. 434, 186 P.3d 1228; *Wurl v. Polson Sch. Dist. No. 23*, 2006 MT 8, ¶ 17, 330 Mont. 282, 127 P.3d 436. However, the mere fact that the parties disagree on the proper interpretation of a contract does not automatically create an ambiguity. *Wurl*, ¶ 17. "The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity." Section 28-3-401, MCA. This Court has consistently refused to "seize upon certain and definite covenants expressed in plain English with violent hands, and distort them." *Steadele v. Colony Ins. Co.*, 2011 MT 208, ¶ 19, 361 Mont. 459, 260 P.3d 145; *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research*, 2005 MT 50, ¶ 17, 326 Mont. 174, 108 P.3d 469; *Johnson v. Equitable Fire & Marine Ins. Co.*, 142 Mont. 128, 131, 381 P.2d 778, 779 (1963).

¶25 We agree with the District Courts' interpretation of the term "Covered Services." The PPA sets forth a clear definition of "Covered Services," that by its plain language, contractually obligates a medical provider to bill or collect discounted rates only where a plaintiff receives services that are paid for under a BCBS health plan. As this Court discussed in *Conway*, where third party coverage is available and responsible for paying the medical expenses, the medical services are not "Covered Services" under the PPA. *Conway*, ¶ 32. The tortured, piecemeal approach to interpreting the PPA undertaken by Harris and Holbert is unpersuasive. Their approach fails to overcome the plainly stated

definition of the term or demonstrate that its use throughout the contract created an ambiguity. None of the other sections of the PPA cited by Harris and Holbert support their broad definition of "Covered Services." Accordingly, we conclude that the term "Covered Services" applies to those medical services which will be paid for by a BCBS health plan.

¶26 Next, we turn to Harris and Holbert's contention that the District Court erred in determining that Billings Clinic and St. Vincent Healthcare were entitled to collect from third-party insurers payment for the full amount of the billed charges for the medical treatment provided to Harris and Holbert. Pertinent to our discussion here, the PPA provides as follows:

> Payment in Full.
> (a) Hospital shall accept the amounts set forth on the appropriate compensation schedule as payment in full, for Covered Services provided with respect to each Member. . . .
> (b) Hospital shall not bill, charge, collect a deposit from, seek remuneration from, or have any recourse against a Member or persons acting on their behalf for Covered Services provided under this Contract . . . .

Harris and Holbert argue that based on the language of these "hold harmless" provisions, BCBS agreed to never collect payment from a member in excess of the PPA reimbursement rate. The District Courts determined that Harris and Holbert failed to demonstrate that St. Vincent Healthcare and Billings Clinic breached the PPA by billing State Farm and Farmers at the usual rate for medical services instead of at the PPA reimbursement rate. We agree with the District Courts.

13

¶27 As we have previously discussed, the obligation to bill and collect payment at the PPA reimbursement rate applies only to "Covered Services." Harris and Holbert never alleged that BCBS was billed for the medical services at issue or made any payment whatsoever to the providers. Instead, the third-party insurers paid for the medical treatment. State Farm and Farmers were not parties to the PPA and were therefore not obligated to comply with its terms. In *Conway*, we similarly determined that the hospital was not precluded from accepting payment for the full amount of the billed services from the medical payments carrier, who was a stranger to the PPA. *Conway*, ¶ 32. Under these circumstances, St. Vincent Healthcare and Billings Clinic did not commit a breach of contract by accepting payment from third-party liability insurers in excess of the reimbursement rates set forth in the PPA.

¶28 Based on our holding that St. Vincent Healthcare and Billings Clinic were entitled to bill and collect at the usual rate from State Farm and Farmers and that no conduct occurred to support Harris and Holbert's breach of contract claims, it is unnecessary to address the District Courts' determinations that Harris and Holbert did not suffer any detriment or legally cognizable damages necessary to support their claims.

¶29 Finally, we examine Harris and Holbert's constructive fraud claims. The District Courts determined that St. Vincent Healthcare and Billings Clinic had no legal duty under the PPA to charge a third-party insurer at the BCBS reduced reimbursement rates. Harris and Holbert argue on appeal that they relied on St. Vincent Healthcare and Billings Clinic's promise to never collect payment from them in excess of the BCBS reimbursement rate. Harris and Holbert contend that St. Vincent Healthcare and Billings

14

Clinic acted in a misleading and deceptive way that sufficiently supports a constructive fraud claim.

¶30 We affirm the District Courts' dismissal of Harris and Holbert's constructive fraud claims. Section 28-2-406, MCA, defines constructive fraud as follows:

> (1) any breach of duty that, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under the person in fault by misleading another person to that person's prejudice or to the prejudice of anyone claiming under that person; or
> (2) any act or omission that the law especially declares to be fraudulent, without respect to actual fraud.

"The presence of a legal duty is an essential element of a claim for constructive fraud." *H-D Irrigating, Inc. v. Kimble Props., Inc.*, 2000 MT 212, ¶ 25, 301 Mont. 34, 8 P.3d 95; *Mattingly v. First Bank of Lincoln*, 285 Mont. 209, 218, 947 P.2d 66, 71 (1997). The existence of a legal duty is a question of law for the court's determination. *H-D Irrigating*, ¶ 25.

¶31 Based on our earlier discussion of the PPA terms, we conclude that St. Vincent Healthcare and Billings Clinic had no legal duty to charge State Farm or Farmers at the BCBS reduced reimbursement rates. Since Harris and Holbert failed to establish the requisite duty element of their constructive fraud claim, we affirm the District Courts' dismissal of their claims.

## CONCLUSION

¶32 For the foregoing reasons, we affirm the District Courts' dismissal of all of Harris and Holbert's claims.

15

We Concur:

/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ JIM RICE
/S/ BRIAN MORRIS

Justice Laurie McKinnon, concurring.

¶33    I agree with the Court's analysis and conclusion that St. Vincent Healthcare and Billings Clinic did not breach the PPA by accepting payment from Farmers and State Farm in excess of the discounted rates set forth in the PPA.  Opinion, ¶ 27.  I also agree with the Court's conclusion that Harris and Holbert failed to state a claim for constructive fraud.  Opinion, ¶ 31. In reaching these conclusions, the Court relies on its interpretation of the PPA—in particular, the term "Covered Services"—and declines to address other aspects of Harris and Holbert's claims. *See* Opinion, ¶¶ 27-28, 31.  While I appreciate the Court's decision in this regard, I write separately because I believe it is important to acknowledge two other deficiencies in Harris and Holbert's breach of contract claim.

¶34    First, a threshold question in any breach of contract action is whether the plaintiff has standing to enforce the contract.  As we have explained, "[s]tanding is a doctrine involving justiciability and, as such, it is a threshold requirement in every case which we must address and decide *sua sponte* even if it is not raised by a litigant." *Dick Anderson Constr., Inc. v. Monroe Constr. Co., LLC*, 2009 MT 416, ¶ 46, 353 Mont. 534, 221 P.3d 675.  We have recognized, moreover, that a stranger to a contract lacks standing to bring an action for breach of that

contract unless he or she is an intended third-party beneficiary of the contract. *Dick Anderson Constr.*, ¶ 46; *Diaz v. Blue Cross & Blue Shield of Mont.*, 2011 MT 322, ¶ 18, 363 Mont. 151, 267 P.3d 756; *Palmer v. Bahm*, 2006 MT 29, ¶ 13, 331 Mont. 105, 128 P.3d 1031.

¶35    Here, Harris and Holbert have failed to allege any facts demonstrating that they have standing to enforce the PPA contracts.  Harris and Holbert are not parties to those contracts.  The parties to the contracts, rather, are St. Vincent Healthcare and BCBS, and Billings Clinic and BCBS.  Moreover, as St. Vincent Healthcare and Billings Clinic point out in their appellate briefs, Harris and Holbert are not intended third-party beneficiaries of the contracts.  In fact, the PPA contracts contain a provision which states:

> 13.3    No Third Party Beneficiary.  Hospital and BCBSMT do not intend to create in any third party a right to enforce this Contract or to claim losses or damages under the Contract, except as may be applicable to HCAs.[1]

Similar to our analysis of the contract at issue in *Dick Anderson Constr.*, the PPA "clearly precludes anyone . . . from claiming third-party beneficiary status under the contract."  *Dick Anderson Constr.*, ¶ 49.  Accordingly, since Harris and Holbert are not parties to the PPA contracts and are not intended third-party beneficiaries of those contracts, they do not have standing to enforce the contracts. *Dick Anderson Constr.*, ¶ 50.

¶36    Second, I agree with the District Courts that Harris and Holbert did not allege any detriment or legally cognizable damages necessary to support their claim.  St. Vincent Healthcare and Billings Clinic billed Harris and Holbert for their medical expenses arising out of the automobile accidents.  State Farm and Farmers, in turn, paid those medical expenses in full.  As a result, neither Harris nor Holbert have any further liability to St. Vincent Healthcare or Billings Clinic.  What Harris and Holbert claim to be aggrieved about in this lawsuit is the fact

---

[1] "HCA" or "Health Care Administrator" is defined elsewhere in the PPA to mean "BCBSMT or a BCBSMT Joint Venture."

17

that St. Vincent Hospital and Billings Clinic billed the medical expenses at customary rates, rather than the discounted rates that would have applied under the PPA had BCBS (rather than State Farm and Farmers) been paying the bills. Harris and Holbert claim they have been damaged in the amount that State Farm and Farmers paid to St. Vincent Healthcare and Billings Clinic in excess of the discounted rates in the PPA—i.e., the difference between the customary rates and the PPA rates. In essence, Harris and Holbert seek a windfall: not only to have their medical expenses paid in full by the third-party liability insurers, but also to receive monetary compensation *above and beyond* those expenses.

¶37 As the District Courts correctly noted, this is precisely the type of recovery that we found to be impermissible in *Newbury v. State Farm Fire & Cas. Ins. Co.*, 2008 MT 156, 343 Mont. 279, 184 P.3d 1021. As in *Newbury*, what Harris and Holbert paid valuable consideration for was to have their medical expenses paid, and it is undisputed that their medical expenses were paid. "To allow [Harris and Holbert] to receive in excess of the total amount of [their] medical expenses would result in a windfall." *Newbury*, ¶ 47. Under § 27-1-202, MCA, "[e]very person who suffers detriment from the unlawful act or omission of another may recover from the person in fault a compensation therefor in money, which is called damages." A "detriment" is "a loss or harm suffered in person or property." Section 27-1-201, MCA. Harris and Holbert have suffered no "detriment" for which recovery may be had.

¶38 I note that in their motion to alter or amend the judgment, Harris and Holbert asserted that they had, in fact, suffered a compensable injury. Specifically, they asserted that Farmers' and State Farm's payments of their medical expenses at customary rates, rather than the discounted rates, effectively reduced their settlement proceeds. Their theory went as follows: since Farmers and State Farm agreed to pay the policy limits, and since a higher proportion of

18

those proceeds were applied to medical expenses billed at the full rate than would have been applied to medical expenses billed at the discounted rate, there consequently was less left over for Harris's and Holbert's general damages. The District Courts agreed that such allegations might set forth a claim for a compensable injury; however, no such facts had been alleged in the amended complaints. The District Courts noted that Harris and Holbert could have sought leave to amend their amended complaints or could have asked the court to consider new facts and convert the motions to dismiss into motions for summary judgment, yet Harris and Holbert had done neither. I agree with the District Courts that a motion to alter or amend a *judgment* under Rule 59(e) of the Montana Rules of Civil Procedure is not a proper vehicle for amending a *complaint*.

¶39 Accordingly, in summary, Harris and Holbert do not have standing to enforce the PPA. Moreover, they have not pleaded any detriment for which recovery may be had. Finally, as the Court holds, the PPA did not require St. Vincent Healthcare and Billings Clinic to bill and collect at the discounted rate from Farmers and State Farm. For all of these reasons, it is fortunate, in my view, that this matter was resolved early in the proceedings through a motion to dismiss. In this manner, the parties have been spared the costly expenses of litigating a class action involving contract claims that the plaintiffs have no factual or legal grounds for pursuing.

¶40 Before concluding, I note one nuance in the Court's resolution of the constructive fraud claim. For purposes of the instant case, constructive fraud requires the breach of a duty. Opinion, ¶ 30; § 28-2-406(1), MCA. As the Court explains, Harris and Holbert contend that they relied on a "promise" by St. Vincent Healthcare and Billings Clinic never to collect payment from them in excess of the BCBS reimbursement rate, and that St. Vincent Healthcare and Billings Clinic acted in a misleading and deceptive manner. Opinion, ¶ 29. Initially, one might

19

assume that this alleged "promise" was made to Harris and Holbert directly, and that St. Vincent Healthcare and Billings Clinic thus had a freestanding duty to Harris and Holbert to bill the discounted rates regardless of which liability insurer would be paying the bill. Such facts would make this a different case. Thus, it is important to be clear that the so-called "promise" to which Harris and Holbert are referring is St. Vincent Healthcare and Billings Clinic's agreement *in the PPA* to bill and collect at the discounted rate where a claimant has received services that are paid for by BCBS. This "promise" was made to *BCBS*, not Harris and Holbert. Moreover, as the Court explains, the "promise" does not impose a legal duty to bill insurers *other than BCBS* at the discounted rates. Opinion, ¶ 31. Hence, there can be no constructive fraud.

¶41 With the foregoing observations, I concur in the Court's decision.


/S/ LAURIE McKINNON