FILED

May 13 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: OP 14-0786

OP 14-0786

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 130

————————————

SHARON MEEK, as Personal Representative of
the ESTATE OF JUDY J. MEEK, Deceased,

      Plaintiff and Petitioner,

    v.

MONTANA EIGHTH JUDICIAL DISTRICT
COURT, CASCADE COUNTY, THE HONORABLE
JON A. OLDENBURG, Presiding Judge,

      Respondent.

OPINION
AND
ORDER

————————————

¶1    This matter comes before the Court on a Petition for Writ of Supervisory Control filed by Petitioner Sharon Meek, as personal representative of the Estate of Judy J. Meek, arising from Cascade County Cause No. BDV-12-0657, *Meek v. Bennett Motors, et al.* This Court adopted a briefing schedule and conducted oral argument on March 11, 2015. Jeffrey G. Winter argued for Petitioner, Cathy Lewis argued for Respondent, and Anders Blewett argued for Amicus Curiae Montana Trial Lawyers Association. The matter having been submitted for decision, we grant the petition and exercise supervisory control.

¶2    The issue is whether the District Court properly granted a defense motion in limine to restrict the medical damages evidence admissible at trial, and granted summary judgment against Meek on that issue.

## BACKGROUND

¶3 Judy Meek passed away on January 23, 2012, after a fall at a business premises on November 2, 2011. Sharon Meek, as personal representative of Judy's Estate (Meek), brought this action against the business where the fall happened, seeking damages for survival and wrongful death.

¶4 In the period between the fall and Judy's death, Judy's medical providers billed $197,154.93 for her care. Judy was covered by Medicare and had supplemental coverage through Blue Cross/Blue Shield. Medicare and BCBS together paid a total of $70,711.26 to Judy's medical providers. The District Court concluded that despite the billing from the medical providers, Judy had "no exposure or obligation to pay any charges beyond those actually paid pursuant to the Medicare rules and the insurance policy with Blue Cross/Blue Shield."

¶5 The issue in the present case arises from the District Court's decision on a pre-trial motion filed by one of the defendants, Pierce's Dodge City. The motion sought to limit Meek's medical expense recovery to the amounts paid to the providers by Medicare and BCBS, and to prevent Meek from presenting evidence to the jury as to the amounts actually billed by the medical providers. After briefing, the District Court concluded that while there was a split of authority nationally, the legal issue has been decided in Montana, citing this Court's decisions in *Conway v. Benefis Health System*, 2013 MT 73, 369 Mont. 309, 297 P.3d 1200 and *Newbury v. State Farm*, 2008 MT 156, 343 Mont. 279, 184 P.3d 1021.

¶6 The District Court determined that since Meek had no liability exposure to the medical care providers in excess of the amount paid by Medicare and BCBS, the only medical expense evidence that she could present to the jury were the amounts that had been paid to the providers. The District Court concluded that the amount actually billed by the providers was not representative of the reasonable value of the medical services provided to Judy and that the amount billed by the health care providers was inadmissible because it "is irrelevant" to any issue or to damages in the case.

¶7 The District Court granted the motion in limine to limit medical damage evidence, and granted summary judgment against Meek on that issue. Meek seeks supervisory control over that order.

**STANDARD OF REVIEW**

¶8 This Court exercises supervisory control in appropriate cases pursuant to Article VII, Section 2(2) of the Montana Constitution and Rule 17(a), M. R. App. P. Supervisory control is appropriate where the district court is proceeding upon a mistake of law which, if not corrected, would cause significant injustice for which appeal is an inadequate remedy. *Inter-Fluve v. Eighteenth Judicial District Court*, 2005 MT 103, ¶ 17, 327 Mont. 14, 112 P.3d 258.

¶9 A motion in limine can seek to prevent or limit the introduction of evidence at trial, and the authority to grant or deny the motion rests in the inherent power of the district court to admit or exclude evidence so as to ensure a fair trial. *Hulse v. Department of Justice*, 1998 MT 108, ¶ 15, 289 Mont. 1, 961 P.2d 75. Where a decision on a motion in limine involves the exercise of discretion, this Court will not overturn the

3

district court absent an abuse of discretion. *State v. Weldele*, 2003 MT 117, ¶ 41, 315 Mont. 452, 69 P.3d 1162. Where a decision on a motion in limine involves a conclusion of law or interpretation of statute, we review to determine whether the result is correct. *State v. Peterson*, 2011 MT 22, ¶ 8, 359 Mont. 200, 247 P.3d 731.

¶10 This Court reviews a district court's decision on summary judgment to determine whether it is correct, using the same criteria under Rule 56, M. R. Civ. P. *Pilgeram v. GreenPoint Mortgage*, 2013 MT 354, ¶ 9, 373 Mont. 1, 313 P.3d 839.

## DISCUSSION

¶11 We do not address Meek's claim regarding the damages she may recover for medical expenses because that is an issue that can be adequately addressed on appeal if necessary. The only issue we address in this pretrial proceeding is whether the District Court properly limited the evidence that is admissible at trial regarding medical expenses.

¶12 The parties agree that Meek is entitled to damages "representing the reasonable value of the medical expenses for medical services obtained by Judy Meek." This is consistent with Montana law, which requires that in all cases damages must be reasonable, and that no party has a right to unconscionable and grossly oppressive damages that are contrary to substantial justice. Section 27-1-302, MCA; *Tidyman's Management Services v. Davis*, 2014 MT 205, ¶ 40, 376 Mont. 80, 330 P.3d 1139.

¶13 The District Court concluded and the respondents argue that amounts billed by health care providers are "not a reliable or accurate indicator of the reasonable value of the services" because they are unreasonably inflated and few patients ever actually pay the billed amount. Respondents argue that the amount the providers actually receive

4

from insurers or other benefit programs is a "far better indicator of the reasonable value of a provider's services." Further, they argue that allowing Meek to present evidence of medical bills in excess of what has been actually paid could lead to a windfall recovery.

¶14 The ultimate issue is whether Meek's medical bills are admissible at trial or whether, as the District Court held, they are irrelevant and inadmissible. All relevant evidence is admissible, except when otherwise provided. Rule 402, M. R. Evid. Relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, M. R. Evid.; *Alexander v. Bozeman Motors, Inc.*, 2012 MT 301, ¶¶ 41-42, 367 Mont. 401, 291 P.3d 1120. Therefore, evidence should not be excluded simply because there may be contrary evidence or because it may be subject to impeachment. Although the District Court ruled that the amount of expenses billed is irrelevant when there is no claim for future medical expenses, medical bills received by a tort victim can be relevant evidence of issues such as the nature and severity of the injuries, and of the medical procedures and treatments that were required. *Chapman v. Mazda Motor of Am.*, 7 F. Supp. 2d 1123, 1125 (D. Mont. 1998).

¶15 The respondents' factual arguments regarding the nature and reliability of medical billings therefore do not provide adequate grounds for a pre-trial order excluding the evidence of the amounts billed by Meek's medical providers. If supported by competent evidence at trial, these arguments could provide matters of impeachment, and could affect the weight the jury might give to the evidence. Without more, however, these factual

contentions do not justify exclusion of the evidence. The District Court's pretrial ruling to exclude all medical bills and grant summary judgment was not justified here, where Meek presented the affidavit of her primary physician that affirmed that the medical services represented in the billings were reasonably necessary to her care. The affidavit also affirmed that the amounts billed were reasonable, were the usual and customary rates for such treatment, and that they represented the reasonable value of the treatment.

¶16 Ultimately, there is a factual dispute in the case over the nature of the bills presented by the medical providers and whether they represent a reasonable measure of the value of the services provided. The reasonableness of the medical bills as a measure of damages is a matter to be determined by the jury. *Burley v. Burlington Northern*, 2012 MT 28, ¶ 91, 364 Mont. 77, 273 P.3d 825. The existence of genuine issues of material fact precludes summary judgment. *Redies v. Attorney Liability Prot. Soc.*, 2007 MT 9, ¶ 26, 335 Mont. 233, 150 P.3d 930. This does not end the inquiry in this case, however, since the District Court also issued an order in limine, limiting the medical expense evidence that would be admissible at trial.

¶17 The District Court's order admitting only evidence of amounts the insurers paid to Meek's health care providers violates § 27-1-308, MCA. That statute, referred to as the collateral source rule, requires that a jury determine its award "without consideration of *any* collateral source." Section 27-1-308(3), MCA (emphasis added). A collateral source, generally, is "a payment for something that is later included in a tort award and that is made to or for the benefit of a plaintiff or is otherwise available to the plaintiff." Section 27-1-307(1), MCA. The statute provides, however, that in a separate post-trial

6

proceeding the district court must reduce a jury's verdict in a personal injury case "by any amount paid or payable from a collateral source that does not have a subrogation right." Section 27-1-308(3), MCA.

¶18 The District Court ruled that the "amount of the write-down" (the medical billings not covered by Medicare or BCBS) was not a benefit or was not otherwise "available" to Meek and therefore did not meet the definition of a collateral source under the statute. However, the payments made by Medicare to satisfy the providers' billings are clearly a collateral source. The District Court's order in this case, and now the Dissent, would not only require that these collateral source payments be considered by the jury, but would also make the collateral source payment conclusively determinative of Meek's medical damages. This is a clear violation of § 27-1-308(3), MCA. The statute prohibits the jury from considering any collateral sources and evidence of collateral source payments is not admissible on the issue of a personal injury claimant's medical expenses.

¶19 Respondents contend that allowing Meek to present evidence of the medical bills from her providers could result in a "windfall" recovery. This contention is addressed by § 27-1-308(1) and (3), MCA, which provides that after a jury verdict in favor of the plaintiff, the district court must hold a hearing and determine whether there were any collateral source payments to account for. If so, the recovery must be reduced by the amount paid or payable from a collateral source.

¶20 Contrary to the District Court's conclusions, the issues in this case were not decided in *Newbury* and *Conway*. Both of those cases involved contract disputes between insureds and insurers over application of insurance policy language, and neither

7

case involved the admissibility of evidence in a personal injury action against a tortfeasor. Most significantly, neither case involved application of the collateral source statute, § 27-1-308, MCA. Neither case resolves the issues raised in the present case.[1]

¶21 The parties have devoted considerable argument to identifying the majority and minority national rules on whether a tort claimant is limited to introducing evidence of medical expenses paid by third parties. *See, e.g.*, *Bynum v. Magno*, 101 P.3d 1149 (Haw. 2004). We do not decide the present case through application of national trends, but through application of the Montana Rules of Evidence and the Montana collateral source statute, § 27-1-308, MCA.

¶22 We reiterate that Montana law requires that damages be reasonable, § 27-1-302, MCA, and *Tidyman's*, ¶ 40, and that it is up to the jury to determine what is reasonable under the circumstances, *Burley*, ¶ 91. This statutory requirement of reasonable damages must be construed along with the collateral source statute, § 27-1-308, MCA, so as to give effect to both. Section 1-2-101, MCA; *Hanson v. Edwards*, 2000 MT 221, ¶ 19, 301 Mont. 185, 7 P.3d 419. Therefore, if at trial Meek introduces evidence of Judy Meek's medical bills the defendants may contest the reasonableness of those bills as a measure of damages. If so, evidence of the amount that Medicare pays to other health care providers for the same or similar service could be relevant to that issue, as long as there is no evidence or argument that Judy Meek was covered by Medicare or other insurance, or that Medicare or an insurer paid any part of her medical expenses. Those matters may be

---

[1] Likewise, *Harris v. Billings Clinic*, 2013 MT 207, 371 Mont. 133, 305 P.3d 852, cited in the Dissent, neither involves issues in a direct action against a tortfeasor or application of § 27-1-308, MCA.

considered only by the District Court and only after a verdict, as provided in § 27-1-308(3), MCA.

¶23   Therefore,

¶24   IT IS ORDERED that the Petition for Writ of Supervisory Control is GRANTED.

¶25   IT IS FURTHER ORDERED that the District Court order on Pierce's Dodge City's motions in limine and summary judgment against Meek, as discussed above, are VACATED and this matter is remanded for further proceedings consistent with this Opinion and Order.

¶26   The Clerk of this Court is directed to provide copies of the Opinion and Order to counsel of record in Cascade County Cause No. BDV 12-0657, counsel for Amicus Curiae Montana Trial Lawyers Association and Montana Defense Trial Lawyers, and to the Honorable Jon A. Oldenburg, presiding District Judge.

DATED this 13th day of May, 2015.


/S/ MIKE McGRATH


We Concur:

/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE

Justice Laurie McKinnon, dissenting.

¶27 I dissent. The Court's decision is inconsistent with Montana's statutes defining damages, §§ 27-1-201, -202, MCA, and with our precedent, specifically *Newbury v. State Farm Fire & Casualty Insurance*, 2008 MT 156, 343 Mont. 279, 184 P.3d 1021, *Conway v. Benefis Health System*, 2013 MT 73, 369 Mont. 309, 297 P.3d 1200, and *Harris v. St. Vincent Healthcare*, 2013 MT 207, 371 Mont. 133, 305 P.3d 852. The Court allows a person injured by another person's tortious conduct to recover more than the actual amount she paid or for which she incurred liability for past medical care and expenses. In my opinion, sums beyond that actually expended are not damages. Fundamental principles of compensatory damages in tort actions compel the conclusion that a plaintiff may recover no more than her actual loss. Additionally, the collateral source rule is a rule of evidence that prevents a jury from knowing that the plaintiff has received payment from a source not associated with the tortfeasor; it therefore has no relevance in establishing the appropriate measure for determining the reasonableness of damages. The Court fails to observe this distinction.

¶28 In these proceedings, which do not include a claim for future medical expenses, there is no question about the appropriate measure of recovery: the Estate is entitled to recover the reasonable value of medical care and services reasonably required and attributable to the tort. "Damages must in all cases be reasonable, and where an obligation of any kind appears to create a right to unconscionable and grossly oppressive damages contrary to substantial justice, no more than reasonable damages can be recovered." Section 27-1-302, MCA. Accordingly, a plaintiff may recover as economic

10

damages *no more* than the reasonable value of the medical services received. The focus on "reasonable value" in § 27-1-302, MCA, is therefore a *limitation* on recovery, not an expansion of recovery beyond a plaintiff's actual loss or liability. The question here involves the application of that measure; that is, whether the "reasonable value" measure of damages means that a plaintiff may recover sums beyond that actually expended.

¶29 In tort actions, damages are normally awarded for the purpose of compensating the plaintiff for the injury suffered, restoring her as nearly as possible to her former position or giving her some pecuniary equivalent. In Montana, compensatory damages are awarded to "redress the concrete loss that a plaintiff has suffered by reason of a defendant's wrongful conduct." *Seltzer v. Morton*, 2007 MT 62, ¶ 148, 336 Mont. 225, 154 P.3d 561. The law of torts "works to ensure that an award of damages restores an injured party as near as possible to the party's pre-tort position—no better, no worse." *Lampi v. Speed*, 2011 MT 231, ¶ 21, 362 Mont. 122, 261 P.3d 1000 (citing *Sunburst Sch. Dist. No. 2 v. Texaco, Inc.*, 2007 MT 183, ¶ 32, 338 Mont. 259, 165 P.3d 1079). We stated in *Sunburst* that an "'injured party is to be made as nearly whole as possible—but not to realize a profit. Compensatory damages are designed to compensate the injured party for actual loss or injury—no more, no less.'" *Sunburst*, ¶ 40 (quoting *Burk Ranches v. State*, 242 Mont. 300, 307, 790 P.2d 443, 447 (1990)). Therefore, damages in a tort action "attempt[] primarily to put an injured person in a position as nearly as possible equivalent to his position prior to the tort." Restatement (Second) of Torts § 901 cmt. a (1979). Moreover, in "determining the measure of compensation, indemnity or restitution, the law of torts ordinarily does not measure its recovery as do the rules based

11

upon unjust enrichment, on the benefit received by the defendant. This first purpose of tort law leads to compensatory damages." Restatement (Second) of Torts § 901 cmt. a.

¶30 Section 911 of the Restatement (Second) of Torts provides guidance for the measure of "reasonable value." While the measure of recovery for the costs of services rendered by a third party is ordinarily the reasonable value of those services, "[i]f . . . the injured person paid less than the exchange rate, he can recover no more than the amount paid, except when the low rate was intended as a gift to him." Restatement (Second) of Torts § 911 cmt. h. Section 911 articulates a rule, applicable to recovery of tort damages generally, which establishes that the "reasonable value" of services rendered is the exchange rate, and if a person has paid less, she can recover no more than the amount paid. Thus, a personal injury plaintiff may recover *the lesser* of (1) the amount paid or incurred for medical services, or (2) the reasonable value of the services.

¶31 This rule is likewise consistent with our statutes which allow compensation for the "detriment" proximately caused by the tortious conduct. Section 27-1-317, MCA, provides for recovery of damages measured by "the amount which will compensate for all the detriment proximately caused" by the tort. "Detriment" is defined as "*a loss or harm* suffered in person or property." Section 27-1-201, MCA (emphasis added). The right to recover compensatory damages is defined by the "detriment" that a person suffers. Section 27-1-202, MCA. While the measure of damages for pain and suffering, emotional disturbances, and even future medical expenses necessarily must be left to the discretion of the jury, the measure of damages for past medical expenses must be the

12

amount that was expended for the service, limited only by what was reasonably attributable to the tortious conduct.

¶32    *Newbury*, *Conway*, and *Harris* also establish that the reasonable value of medical expenses is limited to what was actually incurred.  In *Newbury*, we determined that

> while it was reasonable for Newbury to expect that his State Farm policies would pay his medical expenses (up to the policy limits of $10,000.00) once the State Fund had paid all it was required to pay, it was not reasonable for Newbury to expect to receive funds in excess of his medical expenses.

*Newbury*, ¶ 38.  This Court, in *Newbury*, recognized that medical payments benefits are payable only for medical expenses, and when a plaintiff received full payment of his medical expenses and owed nothing more to his healthcare providers, a windfall would result if the plaintiff were to receive additional money in excess of his total medical expenses.  *Newbury*, ¶¶ 39, 47.  In *Conway*, we stated:

> Here, the record shows that Benefis accepted Kemper's payment of $1,866.29 as payment in full for the actual cost of Conway's medical treatment that resulted from the accident.  Conway does not owe Benefis any remaining amount.  Even though all of Conway's medical expenses have been paid, he still seeks to pocket $1,203.55 in medical payments coverage benefits, representing the difference between Kemper's payment to Benefis and the TRICARE reimbursement rate.  We disagree.  Conway is no more entitled to pocket excess medical payments here than he would be under the circumstances in *Newbury*, or any other situation in which all of his medical expenses are paid by his insurer under its medical payments coverage.

*Conway*, ¶ 35.

¶33    We again explained in *Harris* that an injured party was not entitled to receive the difference in payment between the actual cost of medical treatment and the amount that the physician billed.  *Harris*, ¶¶ 16-17.  I concurred in *Harris*, noting that the plaintiffs

13

had not suffered any "detriment or legally cognizable damages necessary to support their claim." *Harris*, ¶ 36 (McKinnon, J., concurring). Accordingly, it is my opinion that the decision reached today by the Court is inconsistent, indeed irreconcilable, with the foregoing precedent.

¶34 In these proceedings, Judy Meek did not incur liability for her providers' full bills because at the time the charges were incurred, her providers had already agreed to accept a certain amount from both Medicare and Blue Cross/Blue Shield in exchange for their services. Having never incurred the full bill, the Estate cannot recover it in damages for economic loss. As a result of paying her premiums, Judy Meek obtained the benefit of medical services at a reduced rate. She would have paid these premiums and received the benefit of reduced rates regardless of any tortious conduct. Therefore, there is no need to determine the reasonable value of the services where, as here, the exact amount of expenses has been established by contract and has been satisfied.

¶35 Finally, the Court fails to appreciate the distinction between an evidentiary rule and an appropriate measure of reasonable value. The collateral source rule is a rule of evidence which prevents admission of evidence showing that the plaintiff has received payments from sources independent of the tortfeasor. The rule is premised upon the idea that there is minimal probative value in considering the actions of an unrelated third party when assessing the conduct of the tortfeasor and determining compensatory damages. In contrast, it would be very prejudicial to the plaintiff if a jury were to learn that the plaintiff has already been compensated. The collateral source rule also has a substantive aspect apart from its evidentiary basis. Based upon numerous policy considerations, the

14

collateral source rule serves to protect payments conferred on the injured party from other sources unconnected to the tortfeasor from being credited against the tortfeasor's liability. Despite the Court's conclusion to the contrary, Opinion, ¶ 18, a district court can apply a correct measure for reasonable value—the exchange rate—while still adhering to the collateral source rule that prevents the jury from knowing that the plaintiff has been otherwise compensated. A jury does not need to hear the source of the payment, or that a bill has been satisfied; all a jury need hear is the amount of the plaintiff's past expense. The rule enunciated by the Court today would prove much more problematic for a district court to navigate.

¶36 Accordingly, I do not agree that medical bills, other than the amount actually paid and received, are "relevant evidence of issues such as the nature and severity of the injuries, and of medical procedures and treatments that were required." Opinion, ¶ 14. These issues may be established through the testimony of treating physicians and health care providers and not by the admission of bills for amounts over and above what was received and accepted by Judy Meek's medical providers. The desire to present higher bills in order to gain a larger recovery for other types of damages should not override fundamental principles of compensatory damages, our precedent, and Montana's statutes. The evidence is simply not admissible for such a purpose and is not relevant, absent a claim for future medical expenses. Here, the amounts disallowed will not assist in developing a foundation for a life care plan or possible future medical procedures and needs. *See Willink v. Boyne USA, Inc.*, No. CV 12-74-BU-DLC, 2013 U.S. Dist. LEXIS 152566, at *6-7 (D. Mont. Oct. 23, 2013).

¶37    For the foregoing reasons, I dissent from the Court's decision.


/S/ LAURIE McKINNON