JUSTICE McKINNON,
dissenting.
¶27 I dissent. The Court’s decision is inconsistent with Montana’s statutes defining damages, §§ 27-1-201, -202, MCA, and with our precedent, specifically Newbury v. State Farm Fire & Casualty Insurance, 2008 MT 156, 343 Mont. 279, 184 P.3d 1021, Conway v. Benefis Health System, 2013 MT 73, 369 Mont. 309, 297 P.3d 1200, and Harris v. St. Vincent Healthcare, 2013 MT 207, 371 Mont. 133, 305 P.3d 852. The Court allows a person injured by another person’s tortious conduct to recover more than the actual amount she paid or for which she incurred liability for past medical care and expenses. In my opinion, sums beyond that actually expended are not damages. Fundamental principles of compensatory damages in tort actions compel the conclusion that a plaintiff may recover no more than her actual loss. Additionally, the collateral source rule is a rule of evidence that prevents a jury from knowing that the plaintiff has received payment from a source not associated with the tortfeasor; it therefore has no relevance in establishing the appropriate measure for determining the reasonableness of damages. The Court fails to observe this distinction.
¶28 In these proceedings, which do not include a claim for future medical expenses, there is no question about the appropriate measure of recovery: the Estate is entitled to recover the reasonable value of medical care and services reasonably required and attributable to the tort. “Damages must in all cases be reasonable, and where an obligation of any kind appears to create a right to unconscionable and grossly oppressive damages contrary to substantial justice, no more than reasonable damages can be recovered.” Section 27-1-302, MCA. Accordingly, a plaintiff may recover as economic damages no more than the reasonable value of the medical services received. The focus on “reasonable value” in § 27-1-302, MCA, is therefore a limitation on recovery, not an expansion of recovery beyond a plaintiffs actual loss or liability. The question here involves the application of that measure; that is, whether the “reasonable value” measure of damages means *157 that a plaintiff may recover sums beyond that actually expended.
¶29 In tort actions, damages are normally awarded for the purpose of compensating the plaintiff for the injury suffered, restoring her as nearly as possible to her former position or giving her some pecuniary equivalent. In Montana, compensatory damages are awarded to “redress the concrete loss that a plaintiff has suffered by reason of a defendant’s wrongful conduct.” Seltzer v. Morton, 2007 MT 62, ¶ 148, 336 Mont. 225, 154 P.3d 561. The law of torts “works to ensure that an award of damages restores an injured party as near as possible to the party’s pre-tort position — no better, no worse.” Lampi v. Speed, 2011 MT 231, ¶ 21, 362 Mont. 122, 261 P.3d 1000 (citing Sunburst Sch. Dist. No. 2 v. Texaco, Inc., 2007 MT 183, ¶ 32, 338 Mont. 259, 165 P.3d 1079). We stated in Sunburst that an “ ‘injured party is to be made as nearly whole as possible — but not to realize a profit. Compensatory damages are designed to compensate the injured party for actual loss or injury — no more, no less.’ ” Sunburst, ¶ 40 (quoting Burk Ranches v. State, 242 Mont. 300, 307, 790 P.2d 443, 447 (1990)). Therefore, damages in a tort action “attempt!] primarily to put an injured person in a position as nearly as possible equivalent to his position prior to the tort.” Restatement (Second) of Torts § 901 cmt. a (1979). Moreover, in “determining the measure of compensation, indemnify or restitution, the law of torts ordinarily does not measure its recovery as do the rules based upon unjust enrichment, on the benefit received by the defendant. This first purpose of tort law leads to compensatoiy damages.” Restatement (Second) of Torts § 901 cmt. a.
¶30 Section 911 of the Restatement (Second) of Torts provides guidance for the measure of “reasonable value.” While the measure of recovery for the costs of services rendered by a third party is ordinarily the reasonable value of those services, “[i]f... the injured person paid less than the exchange rate, he can recover no more than the amount paid, except when the low rate was intended as a gift to him.” Restatement (Second) of Torts § 911 cmt. h. Section 911 articulates a rule, applicable to recovery of tort damages generally, which establishes that the “reasonable value” of services rendered is the exchange rate, and if a person has paid less, she can recover no more than the amount paid. Thus, a personal injury plaintiff may recover the lesser of (1) the amount paid or incurred for medical services, or (2) the reasonable value of the services.
¶31 This rule is likewise consistent with our statutes which allow compensation for the “detriment” proximately caused by the tortious conduct. Section 27-1-317, MCA, provides for recovery of damages measured by “the amount which will compensate for all the detriment *158 proximately caused” by the tort. “Detriment” is defined as “a loss or harm suffered in person or property.” Section 27-1-201, MCA (emphasis added). The right to recover compensatory damages is defined by the “detriment” that a person suffers. Section 27-1-202, MCA. While the measure of damages for pain and suffering, emotional disturbances, and even future medical expenses necessarily must be left to the discretion of the jury, the measure of damages for past medical expenses must be the amount that was expended for the service, limited only by what was reasonably attributable to the tortious conduct.
¶32 Newbury, Conway, and Harris also establish that the reasonable value of medical expenses is limited to what was actually incurred. In Newbury, we determined that
while it was reasonable for Newbury to expect that his State Farm policies would pay his medical expenses (up to the policy limits of $10,000.00) once the State Fund had paid all it was required to pay, it was not reasonable for Newbury to expect to receive funds in excess of his medical expenses.
Newbury, ¶ 38. This Court, in Newbury, recognized that medical payments benefits are payable only for medical expenses, and when a plaintiff received fiill payment of his medical expenses and owed nothing more to his healthcare providers, a windfall would result if the plaintiff were to receive additional money in excess of his total medical expenses. Newbury, ¶¶ 39,47. In Conway, we stated:
Here, the record shows that Benefis accepted Kemper’s payment of $1,866.29 as payment in fiill for the actual cost of Conway’s medical treatment that resulted from the accident. Conway does not owe Benefis any remaining amount. Even though all of Conway’s medical expenses have been paid, he still seeks to pocket $1,203.55 in medical payments coverage benefits, representing the difference between Kemper’s payment to Benefis and the TRICARE reimbursement rate. We disagree. Conway is no more entitled to pocket excess medical payments here than he would be under the circumstances in Newbury, or any other situation in which all of his medical expenses are paid by his insurer under its medical payments coverage.
Conway, ¶ 35.
¶33 We again explained in Harris that an injured party was not entitled to receive the difference in payment between the actual cost of medical treatment and the amount that the physician billed. Harris, ¶¶ 16-17. I concurred in Harris, noting that the plaintiffs had not suffered any “detriment or legally cognizable damages necessary to *159 support their claim.” Harris, ¶ 36 (McKinnon, J., concurring). Accordingly, it is my opinion that the decision reached today by the Court is inconsistent, indeed irreconcilable, with the foregoing precedent.
¶34 In these proceedings, Judy Meek did not incur liability for her providers’ full bills because at the time the charges were incurred, her providers had already agreed to accept a certain amount from both Medicare and Blue Cross/Blue Shield in exchange for their services. Having never incurred the full bill, the Estate cannot recover it in damages for economic loss. As a result of paying her premiums, Judy Meek obtained the benefit of medical services at a reduced rate. She would have paid these premiums and received the benefit of reduced rates regardless of any tortious conduct. Therefore, there is no need to determine the reasonable value of the services where, as here, the exact amount of expenses has been established by contract and has been satisfied.
¶35 Finally, the Court fails to appreciate the distinction between an evidentiary rule and an appropriate measure of reasonable value. The collateral source rule is a rule of evidence which prevents admission of evidence showing that the plaintiffhas received payments from sources independent of the tortfeasor. The rule is premised upon the idea that there is minimal probative value in considering the actions of an unrelated third party when assessing the conduct of the tortfeasor and determining compensatoiy damages. In contrast, it would be very prejudicial to the plaintiff if a jury were to learn that the plaintiffhas already been compensated. The collateral source rule also has a substantive aspect apart from its evidentiary basis. Based upon numerous policy considerations, the collateral source rule serves to protect payments conferred on the injured party from other sources unconnected to the tortfeasor from being credited against the tortfeasor’s liability. Despite the Court’s conclusion to the contrary, Opinion, ¶ 18, a district court can apply a correct measure for reasonable value — the exchange rate — while still adhering to the collateral source rule that prevents the jury from knowing that the plaintiffhas been otherwise compensated. A jury does not need to hear the source of the payment, or that a bill has been satisfied; all a jury need hear is the amount of the plaintiffs past expense. The rule enunciated by the Court today would prove much more problematic for a district court to navigate.
¶36 Accordingly, I do not agree that medical bills, other than the amount actually paid and received, are “relevant evidence of issues such as the nature and severity of the injuries, and of medical *160 procedures and treatments that were required.” Opinion, ¶ 14. These issues may be established through the testimony of treating physicians and health care providers and not by the admission of bills for amounts over and above what was received and accepted by Judy Meek’s medical providers. The desire to present higher bills in order to gain a larger recovery for other types of damages should not override fundamental principles of compensatory damages, our precedent, and Montana’s statutes. The evidence is simply not admissible for such a purpose and is not relevant, absent a claim for future medical expenses. Here, the amounts disallowed will not assist in developing a foundation for a life care plan or possible future medical procedures and needs. See Willirik v. Boyne USA, Inc., No. CV 12-74-BU-DLC, 2013 U.S. Dist. LEXIS 152566, at *6-7 (D. Mont. Oct. 23, 2013).
¶37 For the foregoing reasons, I dissent from the Court’s decision.